ARROWOOD, Judge.
 

 *11
 
 Nhung Ha ("Ms. Ha") and Nhiem Tran ("Mr. Tran") (collectively, "plaintiffs") appeal from a judgment dismissing their complaint in part, and declaring Nationwide General Insurance Company ("defendant" or "Nationwide") properly cancelled the homeowner's insurance policy it issued to plaintiffs. For the reasons stated herein, we reverse and remand.
 

 I.
 
 Background
 

 Mr. Tran contacted Nationwide on or about 1 April 2015 to secure a homeowner's insurance policy for plaintiffs' home. Nationwide issued the policy that same day.
 

 On or about 14 April 2015, Nationwide's underwriting department sent an inspector to plaintiffs' home. The inspector issued a report on 25 April 2015, identifying several hazards he discovered at the home: (1) rotten siding, (2) an unsecured trampoline, and (3) an unfenced inground pool. Based on this report, Nationwide decided to cancel plaintiffs' policy. The underwriter who made this decision contacted Ms. Brenda Elkerson, a Nationwide employee whose job responsibilities include drafting written notices of policy cancellations, and asked her to prepare a notice cancelling plaintiffs' policy. Ms. Elkerson drafted the letter and sent a memo to the agent on plaintiffs' policy regarding the cancellation. The letter of cancellation listed the hazards identified by the inspector as the reason for the policy's cancellation, and explained the specific steps plaintiffs could take to ameliorate the hazards to reinstate coverage. The letter, dated 22 May 2015, gave plaintiffs until 6 June 2015 to address the hazards. If they did not, Nationwide would cancel the policy at 12:01 a.m. on 6 June 2015.
 

 Ms. Elkerson instructed Nationwide's processing department to print the cancellation letter for mailing. The certificate of mail report maintained by Nationwide shows that the cancellation letter was presented for mailing on 22 May 2015. Although the letter was not returned to Nationwide, plaintiffs never received it.
 

 On 24 July 2015, a fire destroyed plaintiffs' home. When plaintiffs contacted Nationwide to file a claim, they were informed they were not insured, as the policy had been cancelled. Thereafter, plaintiffs retained
 
 *12
 
 legal counsel to pursue a claim for reimbursement, which Nationwide denied by letter on 1 October 2015.
 

 Plaintiffs initiated an action against defendant by filing a complaint in Wake County Superior Court on 24 January 2017, seeking damages for breach of contract and a declaratory
 
 *921
 
 judgment that Nationwide did not timely and properly cancel the policy. Nationwide answered and asserted a counterclaim requesting a declaratory judgment that it properly cancelled plaintiffs' policy.
 

 The matter came on for hearing before the Honorable Rebecca W. Holt in Wake County Superior Court on 27 August 2018. On 31 August 2018, the trial court entered a judgment dismissing plaintiffs' breach of contract claim, and declaring: "Nationwide has no duty or obligation under the Policy to make payment to the Plaintiffs for the damage to the Residence and its contents which resulted from the loss on the grounds that the Policy was timely and properly cancelled." The trial court taxed the costs of the action to plaintiffs.
 

 Plaintiffs appeal.
 

 II.
 
 Discussion
 

 Plaintiffs argue the trial court erred by concluding Nationwide complied with: (1)
 
 N.C. Gen. Stat. § 58-41-15
 
 (c) (2017), and (2) the insurance policy's termination requirements. Because we agree with plaintiffs that the trial court erred by concluding Nationwide complied with
 
 N.C. Gen. Stat. § 58-41-15
 
 (c), we reverse and do not reach the second issue on appeal.
 

 "In reviewing a trial judge's findings of fact, we are strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the ... ultimate conclusions of law."
 
 State v. Navarro
 
 , --- N.C. App. ----, ----,
 
 787 S.E.2d 57
 
 , 62 (2016) (citations and internal quotation marks omitted). "Conclusions of law are reviewed de novo and are subject to full review."
 
 State v. Biber,
 

 365 N.C. 162
 
 , 168,
 
 712 S.E.2d 874
 
 , 878 (2011).
 

 N.C. Gen. Stat. § 58-41-15
 
 governs the cancellation of homeowners' insurance policies. Pursuant to this section, an insurer may only cancel an insurance policy, or renewal thereof "prior to the expiration of the term or anniversary date stated in the policy and without the prior written consent of the insured" if the insurer cancels for one of the reasons listed in
 
 N.C. Gen. Stat. § 58-41-15
 
 (a), which are:
 

 *13
 
 (1) Nonpayment of premium in accordance with the policy terms;
 

 (2) An act or omission by the insured or his representative that constitutes material misrepresentation or nondisclosure of a material fact in obtaining the policy, continuing the policy, or presenting a claim under the policy;
 

 (3) Increased hazard or material change in the risk assumed that could not have been reasonably contemplated by the parties at the time of assumption of the risk;
 

 (4) Substantial breach of contractual duties, conditions, or warranties that materially affects the insurability of the risk;
 

 (5) A fraudulent act against the company by the insured or his representative that materially affects the insurability of the risk;
 

 (6) Willful failure by the insured or his representative to institute reasonable loss control measures that materially affect the insurability of the risk after written notice by the insurer;
 

 (7) Loss of facultative reinsurance, or loss of or substantial changes in applicable reinsurance as provided in G.S. 58-41-30 ;
 

 (8) Conviction of the insured of a crime arising out of acts that materially affect the insurability of the risk; or
 

 (9) A determination by the Commissioner that the continuation of the policy would place the insurer in violation of the laws of this State;
 

 (10) The named insured fails to meet the requirements contained in the corporate charter, articles of incorporation, or bylaws of the insurer, when the insurer is a company organized for the sole purpose of providing members of an organization with insurance coverage in this State.
 

 N.C. Gen. Stat. § 58-41-15
 
 (a)(1)-(10).
 

 *14
 
 A cancellation permitted by
 
 N.C. Gen. Stat. § 58-41-15
 
 (a) :
 

 *922
 
 is not effective unless written notice of cancellation has been delivered or mailed to the insured, not less than 15 days before the proposed effective date of cancellation. The notice must be given or mailed to the insured, and any designated mortgagee or loss payee at their addresses shown in the policy or, if not indicated in the policy, at their last known addresses. The notice must state the precise reason for cancellation.
 
 Proof of mailing is sufficient proof of notice.
 
 Failure to send this notice to any designated mortgagee or loss payee invalidates the cancellation only as to the mortgagee's or loss payee's interest.
 

 N.C. Gen. Stat. § 58-41-15
 
 (b) (emphasis added). However,
 
 N.C. Gen. Stat. § 58-41-15
 
 (b)
 

 does not apply to any insurance policy that has been in effect for less than 60 days and is not a renewal of a policy. That policy may be cancelled for
 
 any reason by furnishing
 
 to the insured at least 15 days prior
 
 written notice of and reasons for cancellation.
 

 N.C. Gen. Stat. § 58-41-15
 
 (c) (emphasis added). The failure to comply with the statutory requirements for cancelling an insurance policy renders the cancellation ineffective.
 
 Pearson v. Nationwide Mut. Ins. Co.
 
 ,
 
 325 N.C. 246
 
 , 259,
 
 382 S.E.2d 745
 
 , 751-52 (1989).
 

 Here, the trial court found that plaintiffs "did not receive the cancellation letter." But the trial court concluded that Nationwide proved by a preponderance of the evidence that it complied with
 
 N.C. Gen. Stat. § 58-41-15
 
 (c), explaining:
 

 Although [sub]section (c) does not include the language,[ ] ["]proof of mailing is sufficient proof of notice", that language is included in [sub]section (b). Reading the statute as a whole and giving the term "furnishing" it's [
 
 sic
 
 ] ordinary meaning - "to provide, supply of equip [
 
 sic
 
 ], for the accomplishment of a particular purpose" (Black's Law Dictionary 608 - 5[th] ed. 1979), this Court finds that the proof of mailing by Nationwide is sufficient notice under the statute. This Court declines to interpret the statute to require Nationwide to prove actual knowledge on the part of the insureds.
 

 *15
 
 It is undisputed that the cancellation of plaintiffs' policy is controlled by
 
 N.C. Gen. Stat. § 58-41-15
 
 (c) : the policy was in effect less than 60 days and was not the renewal of a policy. However, plaintiffs contend the trial court erred by concluding proof of mailing provided sufficient notice to the insured under this subsection. Instead, plaintiffs argue, subsection (c)'s use of the statutory term "furnishing" required actual delivery to and/or receipt of the notice by the insured. We agree.
 

 N.C. Gen. Stat. § 58-41-15
 
 does not define "furnishing[,]" and no case law in North Carolina directly addresses what is required for an insurer to "furnish" notice of cancellation. The only North Carolina case that addresses the definition of "furnishing" is
 
 Queensboro Steel Corp. v. E. Coast Mach. & Iron Works, Inc.
 
 ,
 
 82 N.C. App. 182
 
 ,
 
 346 S.E.2d 248
 
 (1986). However,
 
 Queensboro
 
 is not controlling here, as it involved this Court's interpretation of the term "furnish" in the context of a materialman's lien statute claim under Chapter 44A of the General Statutes, and the relevant statute specifically required furnishing "at the site[.]"
 
 See
 

 id.
 
 at 184,
 
 346 S.E.2d at 250
 
 (analyzing N.C. Gen. Stat. § 44A-10 (2017) ). Nonetheless, as in
 
 Queensboro
 
 , the language before our Court in the instant case is ambiguous, and therefore subject to judicial determination of legislative intent.
 

 As this Court explained in
 
 Queensboro
 
 , "[g]enerally, words in a statute that have not acquired a technical meaning must be given their natural, approved, and recognized meaning. In determining whether statutory language is ambiguous, and therefore subject to judicial determination of legislative intent, courts may consult a dictionary."
 
 Id.
 
 at 185,
 
 346 S.E.2d at 250
 
 (citations and internal quotation marks omitted). Black's Law Dictionary defines furnish, in a legal context, as "[t]o supply, provide, or equip, for accomplishment of a particular purpose."
 
 Id.
 
 at 185-86,
 
 346 S.E.2d at 250
 
 (quoting Black's Law Dictionary 608 (5th ed. 1979) );
 
 see
 
 Webster's College Dictionary 588 (2014) (defining "furnish" as "to supply, provide, or equip with whatever is necessary. ...").
 

 Given the lack of a statutory definition and the dictionary definition of "furnish," it is not
 
 *923
 
 clear whether the legislature, by requiring the insurer "furnish" notice, intended to require actual delivery to and/or receipt of the notice by the insured. Another reasonable interpretation, as argued by defendant, is that proof of mailing is sufficient to "furnish" notice under the statute. Therefore, we conclude the statutory language is ambiguous and we must consider relevant canons of statutory interpretation.
 
 See
 

 Purcell v. Friday Staffing
 
 ,
 
 235 N.C. App. 342
 
 , 347,
 
 761 S.E.2d 694
 
 , 698 (2014) ("When ... a statute is ambiguous, judicial
 
 *16
 
 construction must be used to ascertain the legislative will." (citation and internal quotation marks omitted) ).
 

 "Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."
 
 N.C. Dep't of Transp. v. Mission Battleground Park, DST
 
 ,
 
 370 N.C. 477
 
 , 483,
 
 810 S.E.2d 217
 
 , 222 (2018) (citation and internal quotation marks omitted). Accordingly, we read
 
 N.C. Gen. Stat. § 58-41-15
 
 holistically to determine whether the trial court erred by concluding proof of mailing provided sufficient notice to the insured under subsection (c) of this statute.
 

 Subsection (c) clearly varies from subsection (b), and, because we "presume[ ] that the Legislature acted with full knowledge of prior and existing law[,]"
 
 see
 

 Ridge Cmty. Inv'rs, Inc. v. Berry
 
 ,
 
 293 N.C. 688
 
 , 695,
 
 239 S.E.2d 566
 
 , 570 (1977), we must presume that this variation is meaningful. As such, "proof of mailing" must be different from "furnishing" notice. After all, if the General Assembly intended for proof of mailing to be sufficient under subsection (c), they could have included the express language found in subsection (b) in subsection (c). Instead, the General Assembly provided two different standards for notice.
 

 Defendant does not dispute there is variation between the standards for notice in subsection (b) and (c). However, defendant argues that, reading the statute holistically, subsection (c) does not require as much notice as subsection (b). Therefore, defendant contends, the use of "furnish" in subsection (c) must suggest something less than proof of mailing, which the plain language of the statute states is sufficient to provide notice under subsection (b). In support of this argument, defendant argues the General Assembly would require less notice for cancellations of policies pursuant to subsection (c) because policies cancelled under subsection (c) are either not renewals, or have not been in effect longer than 60 days, or both. In contrast, policies cancelled pursuant to subsection (b) are either renewals, or have been in effect for longer than 60 days. We disagree.
 

 Subsection (b) provides for notice of cancellation to insureds who have committed an offense listed in subsection (a); thus, these insureds are likely aware both that they are noncompliant with the policy, and also that the policy could be terminated based on this act. In contrast, subsection (c) provides for notice of cancellation of policies for any reason. As such, it stands to reason that termination under this subsection requires more notice, as an insured could be caught completely unaware
 
 *17
 
 by a termination of a policy pursuant to subsection (c). Therefore, we hold proof of mailing is not sufficient to "furnish" notice of cancellation to insureds under
 
 N.C. Gen. Stat. § 58-41-15
 
 (c).
 

 Furthermore, the statute at issue is remedial, and intended to protect insureds from in-term policy cancellations without notice; therefore, we construe the statute in favor of finding coverage.
 
 See
 

 Metro. Prop. & Cas. Ins. Co. v. Caviness
 
 ,
 
 124 N.C. App. 760
 
 , 764,
 
 478 S.E.2d 665
 
 , 668 (1996). Toward that end, the purpose of the statute is best served when every provision of the Act is interpreted to provide an insured with the fullest possible protection. It follows that the required notice of cancellation to insureds who are innocent of wrongdoing would not be less than notice to those insureds whose policies are cancelled under subsection (b), based on a bad act listed in subsection (a), such as "[s]ubstantial breach of contractual duties, conditions, or warranties that materially affects the insurability of the risk;" or "[a] fraudulent act against the company by the insured or his representative that materially affects the insurability of the risk[.]"
 
 N.C. Gen. Stat. § 58-41-15
 
 (a)(4)-(5). Accordingly,
 
 *924
 
 subsection (c), which provides for the cancellation of policies for any reason, must be afforded the fullest possible protection.
 

 Therefore, subsection (c)'s requirement that the insurer "furnish" notice of cancellation must mean something more than "proof of mailing." Considering this conclusion in light of the dictionary definition of furnishing, "[t]o supply, provide, or equip, for accomplishment of a particular purpose[,]" we hold the statute requires actual delivery to and/or receipt of the notice by the insured.
 

 Because the facts before us demonstrate nothing more than that Nationwide provided "proof of mailing[,]" and the trial court expressly found plaintiffs did not receive notice, Nationwide failed to afford plaintiffs sufficient notice of the policy's cancellation. As a result, the cancellation was ineffective,
 
 Pearson
 
 ,
 
 325 N.C. at 259
 
 ,
 
 382 S.E.2d at 751-52
 
 , and the trial court erred by concluding Nationwide complied with the provisions of
 
 N.C. Gen. Stat. § 58-41-15
 
 (c).
 

 III.
 
 Conclusion
 

 For the foregoing reasons, we reverse and remand for the trial court to consider the matter consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 Judge INMAN concurs.
 

 Judge TYSON dissents by separate opinion.
 

 *18
 
 Sympathetic facts result in bad precedents. All evidence presented at trial shows Nationwide General Insurance Company ("Nationwide" or "defendant") timely and correctly furnished notice of cancellation to plaintiffs, Ha and Tran. Nationwide's actions and notice fully complied with
 
 N.C. Gen. Stat. § 58-41-15
 
 and with the requirements of the policy agreed to by plaintiffs.
 

 The trial court properly determined Nationwide had furnished notice to plaintiffs concerning the impending termination of plaintiffs' policy. The trial court's conclusions of law are supported by its findings and the evidence at trial and its order is properly affirmed. I respectfully dissent from the majority's opinion.
 

 I. Factual Background
 

 The majority's opinion fails to include relevant evidence and events the trial court found and upon which it entered judgment for defendant. An excess premium check for $ 89.50 was refunded by Nationwide and returned to plaintiffs on 8 June 2015. Pursuant to its policy, Nationwide "returned a pro rata portion of the premium" which also contained the policy number affiliated with plaintiffs' home insurance policy. Nationwide's policy includes printing the policy number on each check to distinguish it from other insurance policies.
 

 Plaintiffs initially denied receipt of this premium refund, but later conceded they had, in fact, received and cashed the check. Nationwide submitted a copy of the cancelled premium refund check with the policy number thereon, and authenticated plaintiffs' signature thereon. After having mailed the premium refund check, Nationwide also discontinued withdrawing policy payments from plaintiffs' checking account. None of these undisputed facts are set out in the majority's opinion.
 

 The majority's opinion also provides only a cursory overview of Nationwide's process to mail notices. The testimony describes Nationwide's extensive mailing protocol. This process includes "an employee from the processing department hand-delivering" the notices of cancellation to "a mailroom employee along with a Certificate of Mail Report." Accompanying the Certificate of Mail Report, was a "manifest listing each cancellation letter with an individual article number and the addressee."
 

 *19
 
 Next, the mailroom employee matches the manifest and the letters, folds the letters by hand, and places the letters into the properly addressed and stamped envelopes. Before delivering the letters to the post office, the mailroom employee counts the number of envelopes to account for all pieces of mail. The 22 May 2015 Certificate of Mail Report, which specifically includes the letter mailed to plaintiffs, shows 510 cancellation letters were presented to the United States Postal Service. This document included Ha's name, address, and policy number. The detailed protocol insures each piece of mail is sent to
 
 *925
 
 the proper address. The premium check sent to plaintiffs and was cashed more than six weeks prior to plaintiffs' loss.
 

 II. Cancellation of Policy
 

 A. Statutory Requirements
 

 The trial court correctly determined the undisputed timeline of this case. On 1 April 2015, Nationwide effectuated a provisional homeowner's insurance policy for plaintiffs. Plaintiffs agreed to pay premiums by automatic draft from their checking account. A Nationwide representative left a voicemail on 10 April 2015 at the number plaintiffs had provided, advising plaintiffs of a routine inspection of their home.
 

 Nationwide inspected plaintiffs' premises on 14 April 2015 and identified several hazards. On 22 May 2015, Nationwide "furnished" and mailed written notice of policy cancellation. The notice of cancellation indicated the policy would terminate on 6 June 2015 at 12:01 a.m.
 

 Our general statutes provide that no insurance provider may cancel a policy without the insured's consent outside an enumerated list of ten specified exceptions.
 
 N.C. Gen. Stat. § 58-41-15
 
 (a) (2017) ("No insurance policy or renewal thereof may be cancelled by the insurer prior to the expiration of the term or anniversary date stated in the policy and without the prior written consent of the insured,
 
 except
 
 for any one of the following [ten] reasons" (emphasis supplied) ). This non-cancellation provision prior to the expiration of the term specifically
 

 does not apply
 
 to any insurance policy that has been in effect for less than 60 days and is not a renewal of a policy. That policy may be cancelled
 
 for any reason
 
 by
 
 furnishing
 
 to the insured at least 15 days prior written notice of and reasons for cancellation.
 

 N.C. Gen. Stat. § 58-41-15
 
 (c) (2017) (emphasis supplied).
 

 *20
 
 This statute plainly indicates section (c) applies to insureds, like plaintiffs, whose policies have been provisionally initiated or insured within the previous sixty-day period. Based upon the stipulated timeline, the policy had been in effect for 51 days when Nationwide furnished notice to plaintiffs to cancel the policy. It is undisputed and the majority's opinion acknowledges defendant's cancellation of plaintiffs' policy clearly falls within
 
 N.C. Gen. Stat. § 58-41-15
 
 (c), because the policy had been in effect "for less than 60 days."
 

 Id.
 

 Here, Nationwide properly cancelled the policy within the first sixty days of issuance. Nationwide is not limited by the enumerated reasons for cancellation, but rather maintained the absolute right to cancel the policy "for any reason."
 
 Id
 
 .
 

 The stipulated timeline also indicates the notice of cancellation fully complied with the statutory requirement of fifteen days' prior written notice to the insured before cancellation became effective. The trial court properly found and the majority's opinion concedes that Nationwide fully complied with the plain terms of the controlling statute.
 

 B. "Furnishing" Notice
 

 The majority's opinion erroneously concludes the word "furnish" must be interpreted to mean Nationwide must prove actual delivery to and receipt of a cancellation letter by plaintiffs. No binding precedents interpret how "furnish" is to be defined in the context of
 
 N.C. Gen. Stat. § 58-41-15
 
 . The majority's opinion notes the only North Carolina case that addresses the definition of "furnish" is
 
 Queensboro Steel Corp. v. E. Coast Mach. & Iron Works, Inc
 
 .,
 
 82 N.C. App. 182
 
 ,
 
 346 S.E.2d 248
 
 (1986). The majority's opinion acknowledges
 
 Queensboro Steel
 
 does not control here because it pertains to the Court's interpretation of the term "furnish" within Chapter 44A of the General Statutes which focuses on materialman's and mechanic's liens.
 

 In reviewing questions of statutory intent and meaning, "[t]he primary objective of statutory interpretation is to give effect to the intent of the legislature."
 
 Purcell v. Friday Staffing
 
 ,
 
 235 N.C. App. 342
 
 , 346,
 
 761 S.E.2d 694
 
 , 698 (2014). If statutory language is ambiguous, this Court should analyze the entire statute in order to determine legislative intent.
 
 See
 

 id.
 
 at 347,
 
 761 S.E.2d at 698
 
 ("When ... a statute is ambiguous, judicial construction must be used to ascertain the legislative will.").
 

 *926
 
 The majority's opinion asserts the statutes must be viewed holistically to determine the intent of the legislature.
 
 See
 

 N.C. Dep't of Transp. v. Mission Battleground Park, DST
 
 ,
 
 370 N.C. 477
 
 , 483,
 
 810 S.E.2d 217
 
 , 222 (2018) ("Perhaps no interpretive fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter
 
 *21
 
 to consider the entire text, in view of its structure and of the physical and logical relation of its many parts.").
 

 This Court can deduce the intent of the legislature by considering the entire text of the statute and comparing the language of two distinct sections.
 
 N.C. Gen. Stat. § 58-41-15
 
 (a) requires actual notice by way of the insured's consent where an insurance company terminates a non-provisional policy prior to its stated expiration.
 

 Section (c) of the statute only requires the insurer to furnish notice of cancellation to an insured under a policy "that has been in effect for less than 60 days." The legislature could have written the statute to require the insurer to prove actual notice and receipt.
 
 See
 

 N.C. Gen. Stat. § 58-36-105
 
 (2017) (governing the cancellation of worker's compensation insurance policies and requiring that a written notice of cancellation must be sent by registered or certified mail, return receipt requested, with the policy remaining in effect "until such method is employed and completed");
 
 see also
 

 N.C. Gen. Stat. § 58-36-85
 
 (2017) (requiring the cancellation of personal motor vehicle insurance policies be sent by first-class mail and providing the insured ten days from receipt of the notice to request review by the Department of Insurance).
 

 Instead, section (c), which applies to provisional and newly issued policies "that has been in effect for less than 60 days," such as plaintiffs' policy, plainly and unambiguously requires notice of cancellation to be furnished. As the majority's opinion concedes, the language distinguishing sections (a) and (c) in the statute indicates the General Assembly's intention to provide "two different standards for notice" to policy holders.
 

 "In a legal context, 'furnish' means '[t]o supply, provide, or equip, for the accomplishment of a particular purpose.' "
 
 Queensboro Steel
 
 ,
 
 82 N.C. App. at 185-86
 
 ,
 
 346 S.E.2d at 250
 
 (quoting
 
 Black's Law Dictionary
 
 608 (5th ed. 1979) ). English language dictionary definitions are similar.
 
 See Webster's New World College Dictionary
 
 588 (5th ed. 2014) ("to supply; provide; give)." Applying the plain meaning of "furnish" or "furnishing," and reading the statute as a whole, led the trial court to correctly conclude the insurer's undisputed proof of mailing satisfies proof of notice.
 

 The General Assembly clearly enacted two different standards of notice. Section (a) requires signed consent and acknowledgment of a cancellation from an insured. Section (c) requires that an insurance company "furnish" or provide notice. In this case, Nationwide acted in accordance with the statute by
 
 providing
 
 or furnishing notice via the United States Postal System to the address plaintiffs had provided.
 

 *22
 
 Requiring the insurer to additionally prove actual receipt of the cancellation letter by the insured is not required by statute.
 

 In
 
 Allstate Ins. Co. v. Nationwide Ins. Co.
 
 , this Court rejected the notion the insured must be provided actual notice.
 
 Allstate Ins. Co. v. Nationwide Ins. Co
 
 .,
 
 82 N.C. App. 366
 
 ,
 
 346 S.E.2d 310
 
 (1986). This Court held a cancellation was effective because "[u]nder North Carolina law, and under the policy language contained in the policy at issue, proper mailing of the cancellation notice is all that is required to cancel the policy."
 

 Id.
 

 at 369-70
 
 , 346 S.E.2d at 312-313.
 

 Here, Nationwide properly followed the plain meaning of the statute by using its mailing protocol to timely cancel this policy. Nationwide need not guarantee receipt by plaintiffs. Had the General Assembly wanted to burden an insurer under the facts before us with the additional responsibility of proving actual receipt by the insured, it clearly knew how to so require and would have drafted and enacted the statute to so provide. The trial court properly concluded Nationwide's proof of mailing sufficiently satisfied the statutory requirements.
 

 C. Nationwide's Policy
 

 Similar to
 
 N.C. Gen. Stat. § 58-41-15
 
 , Nationwide's policy grants it the absolute right
 
 *927
 
 to cancel a policy within sixty days of issuance:
 

 2. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.
 
 Proof of mailing will be sufficient proof of notice.
 

 ....
 

 (b) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel
 
 for any reason
 
 by letting you know at least 10 days before the date cancellation takes effect.
 

 Plaintiffs' assertion that they never received the letter is not determinative of this issue. The testimony at trial indicates Nationwide used a mailing system and protocols to ensure each piece of mail, especially those containing important notices such as notices of cancellation, were furnished to the insured that evidences the statutory and policy requirements. Nationwide provided prior written notice to the plaintiffs of the impending policy cancellation by mailing a letter explaining the
 
 *23
 
 policy would be terminated. The policy explicitly stated proof of mailing served as proof of sufficient notice. Although plaintiffs purportedly never received the letter, detailed testimony of the mailing protocol, the cashed premium check, and the discontinued drafting from plaintiffs' account corroborates the proper cancellation under the policy and the statute.
 

 The "mailbox rule" also "creates a rebuttable presumption that an envelope sent via the postal service with proper postage was delivered to the intended party."
 
 Nationwide Prop. & Cas. Ins. Co. v. Martinson
 
 ,
 
 208 N.C. App. 104
 
 , 116,
 
 701 S.E.2d 390
 
 , 398 (2010) (citations omitted). Here, the testimonial evidence shows the cancellation letter had been sent with the proper postage to plaintiffs' address.
 

 In accordance to the mailbox rule, there is a rebuttable presumption the letter sent via the Nationwide mailing procedures through the postal service was delivered to plaintiffs.
 
 Id
 
 . Plaintiffs failed to rebut this presumption and explain their cashing of the returned premium check for this policy and the discontinued drafting of premiums from their checking account.
 

 The impact of the majority's interpretation of "furnishing" to require actual receipt of cancellation notice by plaintiffs of policies issued less than sixty days will decrease the willingness of insurers to provide immediately binding insurance coverage. Judicially imposing a requirement on insurers to guarantee delivery to or receipt of a cancellation letter during underwriting of new policies issued less than sixty days will lead to greater costs and decreased availability of insurance coverage.
 

 These added costs of guaranteed receipt to cancel by the insurer will inevitably be passed onto consumers. Imposing judicially required certified mailing or other independent verification also interferes with the insurance company's policy and the parties' freedom of contract.
 

 III. Conclusion
 

 N.C. Gen. Stat. § 58-41-15
 
 (c) provides that a policy, which has been in effect for less than sixty days, may be cancelled for any reason so long as the insurer furnishes prior written notice. Nationwide properly provided notice by timely mailing a letter of notification to plaintiffs.
 

 The plain meaning of the words "furnish" or "furnishing" does not include nor compel actual "delivery to" or "receipt of" notice as the majority's opinion holds. Furnish means "to provide." In mailing the letter to the designated address, Nationwide clearly provided and furnished
 
 *24
 
 timely notice to plaintiffs, effectively and timely cancelling their policy and giving them the opportunity to pursue other insurance coverage.
 

 The trial court correctly found the policy had been cancelled effective 6 June 2015 in compliance with
 
 N.C. Gen. Stat. § 58-41-15
 
 and with terms of the Nationwide policy. The trial court's order is correctly affirmed. I respectfully dissent.