IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-783

No. COA21-793

Filed 6 December 2022

Wake County, No. 17 CVS 955

NUNG HA and NHIEM TRAN, Plaintiffs,

v.

NATIONWIDE GENERAL INSURANCE COMPANY, Defendant.

Appeal by Plaintiffs from judgment entered 30 July 2021 by Judge Rebecca W. Holt in Wake County Superior Court. Heard in the Court of Appeals 24 August 2022.

*John M. Kirby for Plaintiffs-Appellants.*

*Robinson, Bradshaw & Hinson, P.A., by Stephen D. Feldman, Travis S. Hinman, and Garrett A. Steadman, for Defendant-Appellee.*

*Young Moore and Henderson, P.A., by Walter E. Brock, Jr., and Angela Farag Craddock, for amicus curiae North Carolina Rate Bureau.*

GRIFFIN, Judge.

¶ 1    Plaintiffs Nung Ha and Nhiem Tran appeal from a judgment finding that Defendant Nationwide General Insurance Company validly cancelled Plaintiffs' homeowner's insurance policy. After review, we affirm the trial court's judgment.

## I.    Factual and Procedural Background

¶ 2    On 24 July 2015, a house fire destroyed Plaintiffs' home in Wake Forest, North Carolina. At issue is whether a homeowner's insurance policy issued by Nationwide was properly cancelled prior to the fire, in which case Plaintiffs are not entitled to

coverage under the policy. Specifically, the issue is whether Nationwide properly cancelled the policy by mailing notice of cancellation to Plaintiffs, or whether further proof that notice was actually received by Plaintiffs is required in order to cancel the policy.

¶ 3 A divided panel of this Court previously considered this matter in June 2019, and the majority issued an opinion holding that the word "furnishing" in N.C. Gen. Stat. § 58-41-15(c) "requires actual delivery to and/or receipt of [a notice of cancellation] by the insured" in order for the homeowner's policy to be validly cancelled: "Because the facts before us demonstrate nothing more than that Nationwide provided 'proof of mailing,' and the trial court expressly found [P]laintiffs did not receive notice, Nationwide failed to afford [P]laintiffs sufficient notice of the policy's cancellation." *Ha v. Nationwide Gen. Ins. Co.*, 266 N.C. App. 10, 17, 829 S.E.2d 919, 924 (2019). Our Supreme Court subsequently vacated this Court's judgment and remanded the matter "to determine whether Article 41, Article 36 or other statutes govern in this matter." *Ha v. Nationwide Gen. Ins. Co.*, 375 N.C. 87, 845 S.E.2d 436 (2020). A majority of this Court over further dissent remanded the case to the trial court for further proceedings consistent with the Supreme Court's instruction.

¶ 4 Following remand, the trial court issued a new judgment finding that N.C. Gen. Stat. § 58-41-15 did *not* apply to the policy but that section 58-44-16 was

applicable. The trial court then found that Nationwide complied with the latter provision by providing proof that the cancellation notice was mailed to Plaintiffs. Plaintiffs timely appeal.

## II.    Analysis

¶ 5        We are now asked to interpret whether N.C. Gen. Stat. § 58-44-16 requires proof that the cancellation notice was actually received by Plaintiffs, or whether proof of mailing is sufficient to cancel the policy. We hold that Nationwide properly cancelled the policy under section 58-44-16 by proving that the cancellation notice was mailed to Plaintiffs. Plaintiffs alternatively argue that the trial court erroneously determined that section 58-41-15 did not apply to the policy. We disagree.

### A.    N.C. Gen. Stat. § 58-44-16

¶ 6        "A question of statutory interpretation is ultimately a question of law for the courts." *Brown v. Flowe*, 349 N.C. 520, 523, 507 S.E.2d 894, 896 (1998). "This Court reviews questions of law de novo, meaning that we consider the matter anew and freely substitute our judgment for the judgment of the lower court." *Lunsford v. Mills*, 367 N.C. 618, 623, 766 S.E.2d 297, 301 (2014).

¶ 7        N.C. Gen. Stat. § 58-44-16(f)(10) governs cancellation of standard fire insurance policies, providing that such policies "may be cancelled at any time by th[e] insurer by *giving to the insured* a five days' written notice of cancellation[.]" N.C.

Gen. Stat. § 58-44-16(4)(10) (2021) (emphasis added). Article 44 does not define what the word "giving" requires, so we look to the plain meaning of the term in order to ascertain the intent of the legislature. *Lunsford*, 367 N.C. at 623, 766 S.E.2d at 301 ("The primary objective of statutory interpretation is to ascertain and effectuate the intent of the legislature. If the language of the statute is clear and is not ambiguous, we must conclude that the legislature intended the statute to be implemented according to the plain meaning of its terms." (citations and internal quotation marks omitted)).

¶ 8    "Undefined words are accorded their plain meaning so long as it is reasonable to do so. In determining the plain meaning of undefined terms, this Court has used standard, nonlegal dictionaries as a guide." *Midrex Tech., Inc. v. N.C. Dept. of Rev.*, 369 N.C. 250, 258, 794 S.E.2d 785, 792 (2016) (citations and internal quotation marks omitted). According to *Webster's New Twentieth Century Dictionary*, to "give" means "to surrender into the power of another; to convey to another; to bestow." *Webster's New Twentieth Century Dictionary of the English Language* 739 (Harold Whitehall ed., 1956). "Giving," the present participle form of "give" used in the statute, means "*the act of* conferring." *Id.* at 740 (emphasis added). We conclude that the plain meaning of the word "give," particularly in its present participle form, includes the act of mailing notice of cancellation to the insured. Indeed, it is hardly reasonable to argue that "giving" does not include the act of mailing an item to another.

¶ 9 We note that the General Assembly requires that cancellation notice be sent via certified mail or actually received with respect to several different types of insurance policies but chose not to include those requirements here. *See, e.g.*, N.C. Gen. Stat. § 58-41-15(a) (2021) (requiring "prior written consent of the insured" in order to cancel certain types of property, liability, title, and indemnity insurance policies); N.C. Gen. Stat. § 58-36-105(b) (2021) (governing worker's compensation insurance policies and providing that notice of cancellation must be in writing and sent via certified/registered mail and that "no cancellation by the insurer shall be effective unless and until such method is employed and completed"). Absent language in the statute requiring more, we conclude that the legislature intended mailing to constitute "giving" notice of cancellation.

**B. N.C. Gen. Stat. § 58-41-15**

¶ 10 Plaintiffs also argue that the trial court erroneously determined that N.C. Gen. Stat. § 58-41-15 did not apply to the policy. This argument is without merit.

¶ 11 N.C. Gen. Stat. § 58-41-10 outlines the scope of insurance policies governed under Article 41 and to which the cancellation provisions in section 58-41-15 apply, stating "[t]his Article does not apply to insurance written under Articles 21, 26, 36, 37, 45 or 46 of this Chapter[ or to] *insurance written for residential risks in conjunction with insurance written under Article 36 of this Chapter*[.]" N.C. Gen. Stat. § 58-41-10(a) (2021) (emphasis added). Our Administrative Code provides that "[f]or

the purposes of G.S. 58-41-10(a), a 'residential risk' is a risk covered under any of the following North Carolina Rate Bureau residential programs," including the "Homeowners Program[ and the] Dwelling Fire and Extended Coverage Program[.]" 11 N.C. Admin. Code 10.0313(a) (2022).

¶ 12        Moreover, N.C. Gen. Stat. § 58-36-1 provides that the North Carolina Rate "Bureau shall promulgate and propose rates for insurance against loss to residential real property with not more than four housing units located in this State[.]" N.C. Gen. Stat. § 58-36-1(3) (2021). Pursuant to section 58-36-55, "[n]o policy form applying to insurance on risks or operations covered by this Article may be delivered or issued for delivery unless it has been filed with the Commissioner by the Bureau and either he has approved it, or 90 days have elapsed and he has not disapproved it." N.C. Gen. Stat. § 58-36-55 (2021). The record reveals that Plaintiffs' insurance policy was written on a standard HO3 form, and the Rate Bureau Commissioner has approved the form under the Homeowner's Program, which is authorized by Article 36. These statutory provisions along with the record clearly establish that Plaintiffs' policy was covered by Article 36, meaning the cancellation provisions in N.C. Gen. Stat. § 58-41-15 do not apply to the policy.

¶ 13        Lastly, "[i]t is a general rule of statutory construction that where one of two statutes might apply to the same situation, the statute which deals more directly and specifically with the situation controls over the statute of more general applicability."

*Oxendine v. TWL, Inc.*, 184 N.C. App. 162, 165–66, 645 S.E.2d 864, 866 (2007) (quoting *Fowler v. Valencourt*, 334 N.C. 345, 349, 435 S.E.2d 530, 532–33 (1993)). Article 36 specifically applies to "insurance against loss to residential real property with not more than four housing units located in this State[.]" N.C. Gen. Stat. § 58-36-1(3) (2021). Article 41 applies generally to a wide variety of policies, including property, liability, title, and indemnity insurance policies. N.C. Gen. Stat. § 58-41-10(a). Accordingly, it is apparent that the legislature intended for Article 36 to apply to standard homeowner's insurance policies. Plaintiffs' argument is therefore without merit.

### III. Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

AFFIRMED.

Judge TYSON concurs.

Judge ARROWOOD dissents by separate opinion.

ARROWOOD, Judge, dissenting.

I respectfully dissent from the majority's holding that proof of mailing is sufficient to cancel an insurance policy under N.C. Gen. Stat. § 58-44-16. Accordingly, I would hold that for an insurance company to effectively cancel a policy under this statute, they would need to show proof the notice of cancellation was actually received.

Our statute states that a "standard fire insurance policy . . . may be cancelled at any time by th[e] insurer *by giving to the insured* a five days' *written notice of cancellation* with or without tender of the excess of paid premium." N.C. Gen. Stat. § 58-44-16(f)(10) (2021) (emphasis added). "When construing a statute, the court looks first to its plain meaning, reading words that are not defined by the statute according to their plain meaning *as long as it is reasonable to do so.* The court must give effect to the plain meaning as long as the statute is clear and unambiguous." *State ex rel. Utilities Comm'n v. Env't Def. Fund*, 214 N.C. App. 364, 366, 716 S.E.2d 370, 372 (2011) (emphasis added) (citing *State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010); *Woodson v. Rowland*, 329 N.C. 330, 338, 407 S.E.2d 222, 227 (1991); *State v. Jackson*, 353 N.C. 495, 501, 546 S.E.2d 570, 574 (2001)). However, when a statute is unclear, "courts must resort to statutory construction to determine legislative will and the evil the legislature intended the statute to suppress." *Jackson*, 353 N.C. at 501, 546 S.E.2d at 574 (citations omitted).

Generally, our courts have sought to protect the insured from the contracts of

adhesion and the general predatory practices of insurance companies by interpreting insurance policy provisions liberally to afford coverage whenever reasonable. *See N.C. Farm Bureau Mut. Ins. Co. v. Stox*, 330 N.C. 697, 702, 412 S.E.2d 318, 321 (1992); *State Cap. Ins. Co. v. Nationwide Mut. Ins. Co.*, 318 N.C. 534, 538, 350 S.E.2d 66, 68 (1986) ("[P]rovisions of insurance policies and compulsory insurance statutes which extend coverage must be construed liberally so as to provide coverage, whenever possible by reasonable construction.") (citations omitted). This is true whether the statute or insurance provision seeks to extend or exclude coverage. *State Cap. Ins. Co.*, 318 N.C. at 538, 350 S.E.2d at 68 (explaining that policy provisions which extend coverage should be construed to provide coverage and exclusion provisions should be construed against the insurer in favor of the insured).

¶ 18        Furthermore, other jurisdictions interpreting similar statutes have found that more than proof of mailing is required to effectively cancel an insurance policy. For example, in *Nunley v. Florida Farm Bureau Mutual Insurance Company*, the court, interpreting an insurance policy, found receipt of the cancellation notice was required to be effective. *Nunley v. Fla. Farm Bureau Mut. Ins. Co.*, 494 So. 2d 306, 307 (Fla. Dist. Ct. App. 1986). In *Nunley*, the provision used language identical to the statute here, stating: "[t]his policy may be cancelled at any time by this company *by giving to the insured a ten-days written notice of cancellation* with or without tender of the excess of said premium above the pro rata premium for the expired time[.]" *Id.* The

*Nunley* court found the language was ambiguous and should therefore be "most reasonably construed as requiring the actual receipt of the notice by the insured." *Id.* Specifically, that court found that when the insurance provision states "the policy may be cancelled by giving notice to the insured in a specific number of days . . . actual receipt by the insured of such notice is a condition precedent to cancellation of the policy by the insured[.]" *Id.* Therefore, any "notice of cancellation mailed by the insurer but not received by the insured [wa]s consequently ineffective as a cancellation." *Id.*

¶ 19 Because the term "giving" is ambiguous in this context, I would conclude the statute must be interpreted in favor of the insured and therefore require proof of delivery for a cancellation notice to be effective. For the foregoing reasons, I would reverse the trial court's order and I respectfully dissent.