IN THE SUPREME COURT OF NORTH CAROLINA

No. 312A19-2

Filed 23 August 2024

NUNG HA and NHIEM TRAN

v.

NATIONWIDE GENERAL INSURANCE COMPANY

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 286 N.C. App. 581 (2022), affirming a judgment entered on 30 July 2021 by Judge Rebecca W. Holt in Superior Court, Wake County. Heard in the Supreme Court on 16 April 2024.

*John M. Kirby for plaintiffs-appellants.*

*Robinson, Bradshaw & Hinson, P.A., by Stephen D. Feldman, Travis S. Hinman, and Garrett A. Steadman, for defendant-appellee.*

*Young Moore and Henderson, P.A., by Angela Farag Craddock and Walter E. Brock, Jr., for North Carolina Rate Bureau, amicus curiae.*

EARLS, Justice.

In this case, we consider whether Nationwide effectively canceled plaintiffs' fire insurance policy before their house burned down. Almost two months before that tragic fire, Nationwide mailed plaintiffs a letter explaining when and why it was terminating their coverage. The cancellation date came and went. Afterwards, Nationwide sent plaintiffs a check listing their policy number and refunding the excess premium. The company also broke from its regular course of drafting monthly

premium payments from plaintiffs' bank account. Plaintiffs contend—and the trial court found—that they never saw the cancellation letter. But they received, signed, and cashed the refund check over a month before the fire.

When Nationwide denied plaintiffs' insurance claim, they sued. Nationwide maintained that it cancelled the policy before the blaze; plaintiffs argued that their coverage remained intact. The Court of Appeals held that Nationwide duly terminated plaintiffs' insurance after giving them the advanced notice required by N.C.G.S. § 58-44-16(f)(10) (2023). We affirm the Court of Appeals, but on slightly different grounds.

Ample evidence shows that plaintiffs had "actual notice" of cancellation. *See Moore v. Adams Elec. Co.*, 264 N.C. 667, 672 (1965). And when the "fact of notice" is clearly shown, the "manner of giving notice" becomes of "secondary importance." *Id.* By equipping plaintiffs with the forewarning, time, and information needed to secure other coverage before their insurance lapsed, Nationwide cancelled their policy in line with subsection 58-44-16(f)(10). We thus modify and affirm the Court of Appeals.

## I.  Background

### A. Plaintiffs Seek Insurance

Plaintiffs Nhiem Tran and Nung Ha married in 1993 while living in Vietnam. Mr. Tran immigrated to the United States in 1996 as an international student at Pacific Christian College. Mrs. Ha soon followed. Together, the couple have one daughter and three sons. In 2010, plaintiffs moved into a house in Wake Forest, North

Carolina.

Plaintiffs began looking for homeowner's insurance in early 2015. They first secured coverage from AAA around March of that year. But after AAA inspected plaintiffs' home, it flagged several hazards, including an unfenced swimming pool and rotting wood. Based on those conditions, AAA canceled plaintiffs' policy. The company sent—and plaintiffs received—a written notice informing them of the cancellation and listing the issues with the property.

In response, plaintiffs sought coverage from Nationwide. On 1 April 2015, Mr. Tran filled out an online insurance application. A Nationwide agent called him that same day to discuss the property and his desired coverage. Mr. Tran arranged for Nationwide to draft monthly premiums from his checking account. He later logged into Nationwide's web portal and signed the policy electronically. Nationwide issued that policy subject to an underwriter's review.

## B. Nationwide Cancels Plaintiffs' Policy

A few weeks later, Nationwide dispatched an underwriter to inspect plaintiffs' property. That inspection unearthed many of the same hazards logged by AAA—rotten siding, an unfenced swimming pool, and an unsecured trampoline. The latter two conditions were classified as "gross hazards." Citing those concerns, Nationwide—like AAA—chose to cancel plaintiffs' policy. The company then mailed plaintiffs a notice of cancellation on 22 May 2015 by first-class mail. The letter listed the three hazards prompting the cancellation. It also explained that plaintiffs' policy

would end on 6 June 2015 unless they fixed the identified risks.

Plaintiffs did not contact Nationwide, and so the company terminated their policy on 6 June 2015—fifteen days after mailing the cancellation letter. According to plaintiffs, they never received that letter. The trial court so found. But everyone agrees that after Nationwide ended plaintiffs' coverage, it stopped drafting monthly premium payments from their bank account. So while funds were withdrawn at the beginning of April, May, and June, plaintiffs did not pay for insurance in July. Also important, two days after the cancellation date, Nationwide mailed plaintiffs a check refunding the excess premium paid for June. The check prominently listed the policy number. And plaintiffs endorsed and cashed that check on 17 June 2015.

On the evening of 24 July 2015, plaintiffs were at church when their home caught fire. The entire structure burned down, consuming the family's belongings. When Mr. Tran called Nationwide to report the blaze, he learned that his policy ended on 6 June 2015. Plaintiffs later filed a claim with Nationwide—the company rejected it, contending that plaintiffs' insurance expired before the fire.

## C. Procedural History of Plaintiffs' Suit

Plaintiffs sued. They invoked N.C.G.S. § 58-41-15(c) (2023), which allows an insurer to cancel a policy within the first sixty days by "furnishing to the insured at least 15 days prior written notice of and reasons for cancellation." According to plaintiffs, the statute requires actual notice of cancellation. And because they never received Nationwide's cancellation letter, plaintiffs continued, their policy remained

in place.

After a bench trial, the trial court entered a judgment dismissing plaintiffs' claims in part and declaring that Nationwide canceled their policy before the fire. Per the court, the company's proof of mailing satisfied the statutory notice requirements. And because Nationwide "timely and properly canceled the [p]olicy," the trial court reasoned, it "did not breach the contract by denying [p]laintiffs' claim."

The Court of Appeals reversed. *See Ha v. Nationwide Gen. Ins. Co.*, 266 N.C. App. 10, 17 (2019). According to the court, "furnish[ing]" notice as required by section 58-41-15 entails more than mere proof of mailing. *Id.* Reasoning that the statute demands "actual delivery to and/or receipt" of a cancellation notice, *id.* at 15, the court reversed and remanded the trial court's judgment, *id.* at 17.

Nationwide appealed to this Court. We unanimously vacated the Court of Appeals decision and remanded to "determine whether Article 41, Article 36 or other statutes govern in this matter." *See Ha v. Nationwide Gen. Ins. Co.*, 375 N.C. 87 (2020). The Court of Appeals returned the case to the trial court to answer that question.

On remand, plaintiffs argued that N.C.G.S. § 58-44-16—a provision called the "standard fire insurance policy"—supplied the governing law. Subsection 58-44-16(f)(10) of that statute covers cancellation. It allows an insurer to end a policy "by giving to the insured a five days' written notice of cancellation." N.C.G.S. § 58-44-16(f)(10) (2023). In plaintiffs' view, that provision requires actual receipt of notice.

But according to the trial court, mailing notice of cancellation satisfies subsection 58-44-16(f)(10). Extending that logic, the court held that Nationwide discharged "its notice obligations under the applicable statutes and under the terms of . . . plaintiffs' homeowners' insurance policy by its proof of mailing a timely cancellation notice." The trial court again entered judgment for Nationwide.

A divided Court of Appeals panel affirmed. *See Ha v. Nationwide Gen. Ins. Co.*, 286 N.C. App. 581 (2022). The majority first held that section 58-44-16 controlled plaintiffs' policy. *Id.* at 583. Turning next to subsection 58-44-16(f)(10), the court concluded that the "plain meaning of the word 'give,' particularly in its present participle form, includes the act of mailing notice of cancellation to the insured." *Id.* at 583–84. The statute does not "require[ ] proof that the cancellation notice was actually received," the majority continued—instead, an insurer's "proof of mailing is sufficient to cancel the policy." *Id.* at 583. Applying that statutory analysis, the court held that Nationwide "properly cancelled the policy under section 58-44-16 by proving that the cancellation notice was mailed to [p]laintiffs." *Id.*

Judge Arrowood dissented. *See id.* at 585 (Arrowood, J., dissenting). Because the word "giving" was ambiguous, he reasoned, precedent required that the statute "be interpreted in favor of the insured." *Id.* at 586–87. He would thus hold that "for an insurance company to effectively cancel a policy under [subsection 58-44-16(f)(10)], they would need to show proof the notice of cancellation was actually received." *Id.* at 585. Plaintiffs appealed to this Court based on the dissent.

## II.  Analysis

Section 58-44-16 sets standard terms for fire insurance policies. *See Boyd v. Bankers & Shippers Ins. Co.*, 245 N.C. 503, 510–15 (1957) (tracing history and evolution of North Carolina's fire insurance provisions). As part of that statutory scheme, the legislature specified how insurers and insureds alike may cancel insurance coverage. N.C.G.S. § 58-44-16(f)(10) (2023). Insureds may end their policy by "communicat[ing] to the insurer a definite and unconditional request" to cancel. *Baysdon v. Nationwide Mut. Fire Ins. Co.*, 259 N.C. 181, 185 (1963). In that event, the "insurer shall, upon demand and surrender of this policy, refund the excess of paid premium above any short rates for the expired time." N.C.G.S. § 58-44-16(f)(10). Insurance companies may also cancel insurance policies by:

> [G]iving to the insured a five days' written notice of cancellation with or without tender of the excess of paid premium above the pro rata premium for the expired time, which excess, if not tendered, shall be refunded on demand. Notice of cancellation shall state that said excess premium (if not tendered) will be refunded on demand.

*Id.*

As this Court explained almost a century ago, statutory notice requirements are "manifestly for the protection of the insured." *See Dawson v. Concordia Fire Ins. Co.*, 192 N.C. 312, 316 (1926). They codify principles of "just dealing." *See Urey v. Southern Fire Ins. Co.*, 197 N.C. 385, 388 (1929). And they recognize the basic fairness of apprising consumers of "so important a matter as the cancellation of [their] insurance policy." *Id.* Subsection 58-44-16(f)(10) extends those values to fire

insurance by obliging an insurer to give at least five days' written notice "before it terminates its contractual relationship with its insured, depriving him of protection." *See Levinson v. Travelers Indem. Co.*, 258 N.C. 672, 674 (1963). As this Court has recognized, though, the legislature crafted statutory notice requirements with a practical eye. *See Pearson v. Nationwide Mut. Ins. Co.*, 325 N.C. 246, 253 (1989). We have thus anchored notice provisions to their real-world purpose: giving insureds the "information necessary for [their] protection" and assuring a "reasonable opportunity to procure other insurance" before tragedy strikes. *See Levinson*, 258 N.C. at 674; *see also Moore*, 264 N.C. at 672.

In line with those principles, we have embraced a functional view of statutory notice requirements like subsection 58-44-16(f)(10). That approach is grounded in pragmatism and legislative fidelity. *See Harrelson v. State Farm Mut. Auto. Ins. Co.*, 272 N.C. 603, 610 (1968) (interpreting notice statute so as "to effectuate the purpose of the Legislature"). Mindful that the General Assembly designed notice provisions to give insureds a meaningful chance to avoid coverage lapses, our cases have elevated that purpose over procedural technicalities. *See Moore*, 264 N.C. at 672. We have thus explained that "the manner in which notice is given is of secondary importance—it is the *fact* of notice" that matters. *Id.* (emphasis added); *see also Levinson*, 258 N.C. at 674 ("When the notice to the insured conforms to the statute and *gives him information necessary for his protection*, the contractual obligation ends at the time fixed." (emphasis added)); *cf. Travelers Indem. Co. v. Guess*, 255 S.E.2d

55, 56 (Ga. 1979) (explaining that the statutory notice "methods adopted by the General Assembly are intended to assure actual notice of cancellation to an insured and where it is admitted such notice was received, the purpose of the statute has been accomplished").

This case tests our commitment to substance over form. The parties ask us to delimit subsection 58-44-16(f)(10) and decide, as did the Court of Appeals, whether "proof of mailing" qualifies as "giving" written notice. *Cf. Ha*, 286 N.C. App. at 583–84. But we settle the dispute on narrower grounds. Everyone agrees that actual notice of cancellation satisfies subsection 58-44-16(f)(10). In general terms, a person has actual notice when the information "given directly to" him imparts clear knowledge of a fact or condition with legal significance. *See Actual Notice*, Black's Law Dictionary (11th ed. 2019); *see also Horton v. Home Ins. Co.*, 122 N.C. 498, 500 (1898) (insureds lacked notice because they "had no knowledge or information" of a property sale). And here, abundant evidence shows that plaintiffs had actual notice of cancellation well before the fire. Because Nationwide gave plaintiffs the timely forewarning required by subsection 58-44-16(f)(10), it properly canceled their policy.

Our holding, however, is specific to this record and the actual notice it divulges. We decline to gratuitously opine on whether depositing notice in the mail counts as "giving" written notice under subsection 58-44-16(f)(10). That restraint coheres with principles of judicial economy. It also tracks our cautious approach to evidence-

intensive insurance disputes.[1] And most importantly, it affirms our longstanding recognition that "it is the *fact* of notice that is important." *Moore*, 264 N.C. at 672 (emphasis added).

Our precedent bears those principles out, illustrating our practical approach to statutory notice requirements. Consider our decision in *Moore*. In that case, the plaintiff—a worker for the Adams Electric Company—was injured on the job. *See Moore*, 264 N.C. at 667. After the accident, the plaintiff sought compensation and reimbursement for medical expenses from his employer. *Id.* at 668. The employer, as required by statute, had secured workmen's compensation insurance. *See id.* But the insurer insisted that it cancelled the employer's policy *before* the plaintiff's accident. *Id.* at 669. On that basis, the insurer disclaimed liability. *Id.*

There, as here, the case hinged on whether the insurer cancelled its policy in line with statutory notice requirements. *See id.* at 672. There, as here, the insurer mailed a notice of cancellation to the employer. *Id.* at 669. And there, as here, the employer contended that the cancellation notice "was either not received by" it or "was misplaced in [its] office." *Id.* The Industrial Commission found that the insurer

---

[1] *See, e.g., Harrelson*, 272 N.C. at 611 (deciding case on presented facts and thus deeming it "unnecessary" to examine the scope and application of various insurance statutes); *Abernethy v. Mecklenburg Farmers' Mut. Fire Ins. Co.*, 213 N.C. 23, 27 (1938) (holding that "the evidence clearly shows that the [notice] statute was not complied with" and—after noting potential conflict between statute and insurer's by-laws—explaining that "from the view we take of this case, this question is not necessary to be decided"); *Smith v. Nationwide Mut. Ins. Co.*, 315 N.C. 262, 268 (1985); *Dixie Fire & Cas. Co. v. Esso Standard Oil Co.*, 265 N.C. 121, 130 (1965).

never "gave notice of an intention to cancel [its] workmen's compensation policies to [the] employer by registered mail or certified mail, as required by law." *Id.* at 672 (emphasis omitted). For that reason, the Commission deemed the cancellation ineffective and the insurer liable "upon the risk at the time of the injury." *Id.* (emphasis omitted).

This Court found that reasoning myopic and held that the Commission "reached the erroneous conclusion that the policy could only be terminated by registered or certified mail." *Id.* We underscored the goal of the notice requirement: to "assure an employer sufficient opportunity to procure other insurance." *Id.* In line with that purpose, we reasoned that "the fact of notice" is the statutory lodestar— measured against that animating goal, the "manner in which notice is given is of secondary importance." *Id.* By those lights, the Commission impermissibly "paramounted the *manner* of giving notice rather than the *fact* of notice." *Id.* (emphasis added). "If, in fact, [the] [e]mployer had 30 days' notice" of the insurer's "intent to terminate its compensation insurance," we explained, "the fact that notice was given by some means other than registered or certified mail would not prevent cancellation." *Id.* In our view, then, the "Commission should have answered this factual question: Did [the] [e]mployer have 30 days' actual notice of" the insurer's "intent to cancel its insurance policy"? *Id.* at 672–73. Because the insurer's liability hinged on that issue, we remanded for the Commission to "make necessary findings of fact on which it may make an award." *Id.* at 673.

The same logic controls this case. Though plaintiffs deny receiving Nationwide's cancellation letter, other direct datapoints armed them with clear knowledge and advanced warning of their policy's termination. *Cf. Horton*, 122 N.C. at 500. For that reason, plaintiffs had actual notice of cancellation and Nationwide duly ended their insurance before the fire.

We first offer some key context: Before contracting with Nationwide, plaintiffs sought coverage from AAA. But AAA cancelled plaintiffs' policy after an underwriter inspected their home and noted many of the hazards later flagged by Nationwide. AAA mailed, and plaintiffs received, a cancellation letter that itemized the issues with their property. But rather than fix those risks, plaintiffs sought new insurance from a different insurer. So when plaintiffs contracted with Nationwide, they did not do so in a vacuum—they signed that policy aware of, and yet declining to address, the hazards that led another insurance carrier to end their coverage just weeks before. It is significant, then, that Nationwide cancelled plaintiffs' policy for the same risks cited by AAA and known by plaintiffs.

Important, too, Nationwide's cancellation letter was not its last mailing to plaintiffs. Two days after their policy was terminated, Nationwide sent plaintiffs a check refunding the excess premium. Plaintiffs not only received that check, but personally signed and cashed it on 17 June 2015. *See Horton*, 122 N.C. at 501 (explaining that insured did not receive notice and emphasizing that "[n]o part of the unearned premium was ever repaid or tendered to [her]"); *see also White v. Dixie Fire*

*Ins. Co.*, 226 N.C. 119, 124 (1946) (citing insured's receipt of excess premium as a factor relevant to whether insurer provided notice of cancellation). The check clearly listed plaintiffs' policy number. And the amount of the refund equaled the June premium, less the window of coverage until the cancellation date on 6 June 2015. Other state courts have found actual notice based on similar evidence.[2] Here, by the date of the fire on 24 July 2015, 46 days had passed since Nationwide mailed the reimbursement check, and 37 days since plaintiffs cashed it.

Yet another factor coincided with and contextualized that refund check. Recall that plaintiffs allowed Nationwide to draft monthly payments from their bank account. Over the policy's lifespan, Nationwide thrice withdrew that cost—and at regular intervals, too. Each time the company drafted payments, it did so within the first four days of the month: first on April 3rd, next on May 4th, and finally on June 2nd. In July, though, that regular cadence halted—a break from routine that started only *after* plaintiffs deposited the check refunding their June premium and prominently displaying their policy number.

---

[2] *See, e.g., Carter v. Allstate Indem. Co.*, 592 So. 2d 66, 69–70 (Miss. 1991) (concluding that insured "receive[d] *actual* notice of the cancellation" in part because insurer mailed, and insured cashed, a refund check for the unearned premium that "clearly exhibit[ed] the policy number on its face" and "equaled the amount of the refund which would have been due" after coverage ended); *see also Favati v. Nat'l Prop. Owners Ins. Co.*, 266 S.E.2d 359, 361 (Ga. Ct. App. 1980) (finding that insured had actual notice of cancellation after he received, personally endorsed, and deposited a refund check "bearing information thereon that by reasonable implication informed [insured] the check was a return of premium that the [insurance] policy, by number, had been canceled"); *Conrad v. Universal Fire & Cas. Ins. Co.*, 686 N.E.2d 840, 844 (Ind. 1997) (noting that if premium "refund had been transmitted to the [insureds], it presumably would have put them on notice of cancellation").

Taken together, the facts show plaintiffs' actual notice of cancellation. We reach that conclusion based on:

- Plaintiffs' preexisting knowledge of specific property hazards;

- AAA's written cancellation of plaintiffs' coverage just weeks before they contracted with Nationwide;

- Plaintiffs' receipt, personal endorsement, and cashing of a check emblazoned with their policy number and matching their excess June premium; and

- Nationwide's abrupt cessation of once-regular monthly withdrawals from plaintiffs' bank account.

Continuing our focus on substance over form, we hold that plaintiffs had advanced warning of cancellation and were armed with the "information necessary for [their] protection." *Levinson*, 258 N.C. at 674. Because "the manner in which notice is given is of secondary importance" when clear evidence shows an insured's actual notice, *see Moore*, 264 N.C. at 672, we begin—and end—our analysis with plaintiffs' direct and palpable knowledge of their policy's expiration. It is unnecessary to parse the scope of subsection 58-44-16(f)(10), and we decline the parties' requests to do so.

### III.   Conclusion

On this discrete record, we hold that Nationwide gave plaintiffs the timely forewarning required by subsection 58-44-16(f)(10) and aligned with the "purpose of

the Legislature." *Harrelson*, 272 N.C. at 610. Because Nationwide canceled plaintiffs' coverage well before 24 July 2015, their policy was not in place at the time of the tragic fire. The Court of Appeals correctly affirmed the trial court's judgment for Nationwide, though it did so by construing the statute rather than consulting the evidence. We thus affirm the Court of Appeals but modify its opinion to focus on the "fact of notice" rather than the "manner of giving notice." *Moore*, 264 N.C. at 672.

MODIFIED AND AFFIRMED.