NO. COA13-1252

NORTH CAROLINA COURT OF APPEALS

Filed: 5 August 2014

KIMBERLY PURCELL,
  Employee,
  Plaintiff,

  v.          North Carolina
             Industrial Commission
FRIDAY STAFFING,      I.C. No. X57382
  Employer,
ZURICH NORTH AMERICAN, Carrier
(GALLAGHER BASSETT SERVICES,
Third-Party Administrator),
  Defendants.


Appeal by plaintiff from opinion and award entered 21 June 2013 by the North Carolina Industrial Commission. Heard in the Court of Appeals 5 March 2014.

> *Ganly & Ramer, by Thomas F. Ramer, for plaintiff-appellant.*
>
> *McAngus, Goudelock & Courie, P.L.L.C., by Sally B. Moran and Colin E. Cronin, for defendants-appellees.*


GEER, Judge.


Plaintiff Kimberly Purcell appeals an opinion and award of the Industrial Commission denying her claim for workers' compensation benefits. Plaintiff contends on appeal that the Commission improperly applied N.C. Gen. Stat. § 97-12.1 (2013) when it concluded that the injury she suffered while working for

defendant Friday Staffing was causally connected to a previous work-related injury that plaintiff concealed when she applied for employment with Friday Staffing. However, we agree with the Commission's interpretation of N.C. Gen. Stat. § 97-12.1 that a causal connection exists between a willfully misrepresented prior condition and a present injury if the former increases the risk of the latter. Because there was sufficient evidence in this case that plaintiff's prior undisclosed work-related injury increased the risk of sustaining her present injury, we affirm.

## Facts

On 6 August 1999, plaintiff suffered an injury to her back while working for Quality Assured Enterprises. A lumbar MRI revealed a disc protrusion in her lower back at the L5-S1 vertebrae and disc degeneration at the L4-5 vertebrae. Dr. Stewart J. Harley treated plaintiff for those injuries, in part with a surgical procedure called a microdiscectomy, and he initially restricted plaintiff from doing any work that involved bending, stooping, lifting, or twisting. Following a functional capacity evaluation ("FCE") and after reaching maximum medical improvement, plaintiff was given a seven percent partial disability rating to her back. Dr. Harley prescribed physical therapy and eventually relaxed plaintiff's lifting restrictions

to permit lifting of no more than 20 pounds, although he encouraged her to find sedentary-level work.

As a result of this injury, plaintiff filed a workers' compensation claim against Quality Assured. Plaintiff and Quality Assured signed a Compromise Settlement Agreement on 24 January 2002 for an amount of $50,000.00 to be paid to plaintiff. Part of the Settlement Agreement stated, "IT IS UNDERSTOOD by and between the respective parties hereto that party of the second part's condition as the result of her accident may be permanent and may be progressive, that recovery therefrom is uncertain and indefinite . . . ." The Settlement Agreement also noted that plaintiff did not dispute that she had a seven percent permanent partial impairment to her back.

Subsequently, plaintiff worked in different jobs for various companies. She continued to receive treatment for back pain through her primary care providers. In 2007, plaintiff complained of low back pain radiating down her left leg and weakness in her left leg. After her primary care provider recommended a lumbar MRI and physical therapy, plaintiff told her, on 20 July 2007, that she had a disc bulge at L4-5. Her doctor diagnosed degenerative disc disease, wrote a prescription for a TENS unit, and recommended physical therapy. On 23 January 2008, plaintiff again complained of back pain, told her

primary care provider that she was seeing a neurosurgeon, and said she might need back surgery.

On 28 May 2010, plaintiff applied for employment with defendant Friday Staffing, a company that fills the labor needs of a clientele of employers with potential employees it hires. The employment application included two pertinent questionnaires: a "Friday Essential Functions Questionnaire" and a "Medical History Questionnaire."  On the Essential Functions questionnaire, plaintiff indicated that she could engage in the following activities: lifting more than 50 pounds; carrying more than 50 pounds; frequent bending, pulling, pushing, kneeling, squatting, and twisting; standing for long periods; and sitting for long periods.  In the Medical History portion of the application, plaintiff indicated that she had never filed a workers' compensation insurance claim, suffered any injury or undergone surgery, or received treatment or consultation about back pain or possible back injuries.

To complete her application, plaintiff signed the following verification: "I hereby state all information on this Work History Record is true and factual. . . .  I understand that any false statement may result in my immediate dismissal. . . .  I understand that Friday Services is an Employer-At-Will, and that

my employment can be terminated at any time, with or without reason and with or without cause."

Friday Staffing matched plaintiff with Continental Teves, a company that manufactures automotive parts. Friday Staffing then conducted an in-person interview in which plaintiff verified her ability to lift and carry up to and over 50 pounds and that she had not filed any workers' compensation claims previously, did not have any condition that might limit her ability to perform any work assignment, had not had any prior injury or surgery, and had not ever received treatment or consultation for back pain or a back injury.

Plaintiff initially began working for Continental Teves on 2 June 2010 as an assembly line worker. The job profile for the position included occasional walking and stooping; frequent overhead reaching; pushing 40- to 45-pound baskets of automotive parts; lifting automotive parts from baskets to the assembly line; and carrying boxes of automotive parts from a staging area to a table.

At Continental, plaintiff worked a CO2 line and a drum line. With regard to the CO2 line, the Commission found that plaintiff was required to constantly lift trailer arms weighing between 20 and 25 pounds. In April 2011, plaintiff was working 80 percent of her time on the CO2 line, "which involved the more

strenuous work of the lines Plaintiff worked." At approximately 1:00 a.m. on 18 July 2011, while at work, plaintiff re-injured her back. A subsequent MRI revealed a "new large focal disk [sic] extrusion at L5-S1 compressing the descending right S1 nerve root." Since the 18 July 2011 injury, plaintiff has been out of work.

Plaintiff completed an undated Form 18, "Notice of Accident to Employer and Claim of Employee," and on 17 November 2011, defendant Friday Staffing filed a Form 61 denying liability for plaintiff's claim. The deputy commissioner denied her claim in an opinion and award filed 9 November 2012. Plaintiff appealed to the Full Commission.

The Full Commission filed an opinion and award on 21 June 2013, affirming the opinion and award of the deputy commissioner with minor modifications. The Commission concluded that plaintiff's claim should be denied pursuant to N.C. Gen. Stat. § 97-12.1 on the grounds that at the time plaintiff was hired: "(1) Plaintiff knowingly and willfully made a false representation as to her physical condition; (2) Defendant-Employer relied upon said false representation by Plaintiff, and the reliance was a substantial factor in Defendant-Employer's decision to hire her; and (3) there was a causal connection between the false representation by Plaintiff and her claimed

injury." Plaintiff timely appealed the Full Commission's opinion and award to this Court.

## Discussion

Our review of a decision of the Industrial Commission "is limited to determining whether there is any competent evidence to support the findings of fact, and whether the findings of fact justify the conclusions of law." *Cross v. Blue Cross/Blue Shield*, 104 N.C. App. 284, 285-86, 409 S.E.2d 103, 104 (1991). "The findings of the Commission are conclusive on appeal when such competent evidence exists[.]" *Hardin v. Motor Panels, Inc.*, 136 N.C. App. 351, 353, 524 S.E.2d 368, 371 (2000). As the fact-finding body, "'[t]he Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony.'" *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 115, 530 S.E.2d 549, 552 (2000) (quoting *Adams v. AVX Corp.*, 349 N.C. 676, 680, 509 S.E.2d 411, 413 (1998)). "[T]he Industrial Commission's conclusions of law are reviewable *de novo*." *Johnson v. Herbie's Place*, 157 N.C. App. 168, 171, 579 S.E.2d 110, 113 (2003).

Plaintiff challenges the Full Commission's interpretation and application of N.C. Gen. Stat. § 97-12.1, which provides:

> No compensation shall be allowed under this Article for injury by accident or occupational disease if the employer proves that (i) at the time of hire or in the

course of entering into employment, (ii) at the time of receiving notice of the removal of conditions from a conditional offer of employment, or (iii) during the course of a post-offer medical examination:

(1) The employee knowingly and willfully made a false representation as to the employee's physical condition;

(2) The employer relied upon one or more false representations by the employee, and the reliance was a substantial factor in the employer's decision to hire the employee; and

(3) There was a causal connection between false representation by the employee and the injury or occupational disease.

Plaintiff does not dispute the Commission's determination that the first two elements were met, but contends on appeal that that the Commission erred in finding a causal connection, the third element. In making this argument, plaintiff appears to contend that defendants must show through expert testimony "that the herniated disc was caused or contributed [to] by the alleged fraud." Defendants, however, contend that plaintiff has applied the wrong causation standard.

Our appellate courts have not interpreted and applied N.C. Gen. Stat. § 97-12.1 since its enactment in 2011. "Questions of statutory interpretation are questions of law[.] . . . The primary objective of statutory interpretation is to give effect

to the intent of the legislature. The plain language of a statute is the primary indicator of legislative intent." *First Bank v. S & R Grandview, L.L.C.*, ___ N.C. App. ___, ___, 755 S.E.2d 393, 394 (2014) (internal citations omitted). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning. When, however, a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (internal citation and quotation marks omitted).

Statutory language is ambiguous if it is "'fairly susceptible of two or more meanings.'" *State v. Sherrod*, 191 N.C. App. 776, 778, 663 S.E.2d 470, 472 (2008) (quoting *Abernethy v. Bd. of Comm'rs of Pitt Cnty.*, 169 N.C. 631, 636, 86 S.E. 577 580 (1915)). Because our courts have defined the phrase "causal connection" differently depending on the issues involved, that phrase is ambiguous when included in a statute, at least in the workers' compensation context. *Compare Chambers v. Transit Mgmt.*, 360 N.C. 609, 618, 619, 636 S.E.2d 553, 559 (2006) (explaining that in order to prove "causal connection" between specific traumatic event and injury, plaintiff must show that injury was "'the direct result of a specific traumatic incident'" (quoting N.C. Gen. Stat. § 97-2(6) (2005)) *with*

*Morrison v. Burlington Indus.*, 304 N.C. 1, 39, 43, 282 S.E.2d 458, 481, 484 (1981) (requiring for "causal connection" a showing that "occupational conditions . . . significantly contributed to the [occupational] disease's development"), *and Gallimore v. Marilyn's Shoes*, 292 N.C. 399, 402, 233 S.E.2d 529, 531 (1977) (holding decedent's death did not arise out of her employment due to lack of "causal connection" between work and death since nature of work did not increase risk she would be slain by criminal act).

When confronted with ambiguous statutory language, we may determine the intent of the legislature by "'considering [the statute's] legislative history and the circumstances of its enactment.'" *Lanvale Props., LLC v. Cnty. of Cabarrus*, 366 N.C. 142, 164, 731 S.E.2d 800, 815 (2012) (quoting *Shaw v. U.S. Airways, Inc.*, 362 N.C. 457, 460, 665 S.E.2d 449, 451 (2008)). Also, when construing an amendment, "[i]n determining legislative intent, we may 'assume that the legislature is aware of any judicial construction of a statute.'" *Blackmon v. N.C. Dep't of Corr.*, 343 N.C. 259, 265, 470 S.E.2d 8, 11 (1996) (quoting *Watson v. N.C. Real Estate Comm'n*, 87 N.C. App. 637, 648, 362 S.E.2d 294, 301 (1987)).

Prior to the enactment of N.C. Gen. Stat. § 97-12.1, a majority opinion in *Freeman v. J.L. Rothrock*, 189 N.C. App. 31,

36, 657 S.E.2d 389, 392-93 (2008), *rev'd per curiam sub nom. Estate of Freeman v. J.L. Rothrock, Inc.*, 363 N.C. 249, 676 S.E.2d 46 (2009), attempted to adopt the "*Larson* test":

> Pursuant to the Larson test, an employee may be barred from recovering workers' compensation benefits as a result of a false statement at the time of hiring when the employer proves:
>
> (1) The employee must have knowingly and wilfully made a false representation as to his or her physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury.
>
> 3 *Larson's Workers' Compensation Law* § 66.04 (2006) (footnotes omitted).

Although the *Freeman* majority opinion found "no specific statutory basis for the Larson test," it nonetheless reasoned that common law doctrines provided implicit authority because "'in construing the provisions of this State's Workers' Compensation Act, common law rules . . . remain in full force . . . .'" *Id.* at 37, 38, 657 S.E.2d at 393, 394 (quoting *Tise v. Yates Constr. Co.*, 122 N.C. App. 582, 587, 471 S.E.2d 102, 106 (1996)). This Court, after applying the *Larson* test, reversed

the Industrial Commission's award of compensation to Mr. Freeman on the grounds that he had made misrepresentations to his employer regarding a prior back injury and workers' compensation claim. *Id.* at 48, 657 S.E.2d at 399.

Judge Wynn, however, dissented, noting: "Not only have we previously rejected the *Larson* test, there is no legislative authority for this Court to adopt such a test." 189 N.C. App. at 49, 657 S.E.2d at 400 (Wynn, J., dissenting). The Supreme Court reversed "for the reasons stated in the dissenting opinion[.]" *Estate of Freeman*, 363 N.C. at 250, 676 S.E.2d at 46.

In short, just two years preceding the enactment of N.C. Gen. Stat. § 97-12.1, the Supreme Court reversed *Freeman* because this Court had "no legislative authority" to read the *Larson* test into the Workers' Compensation Act. 189 N.C. App. at 49, 657 S.E.2d at 400 (Wynn, J., dissenting). Then, when the legislature enacted N.C. Gen. Stat. § 97-12.1, it used language identical to the *Larson* test as set out and applied in this Court's opinion in *Freeman*. We presume that the legislature was aware of this Court's decision in *Freeman* applying the *Larson* test and, under these circumstances, we conclude that the legislature intended to adopt the *Larson* test as *Freeman* initially expressed and applied it.

In *Freeman*, this Court determined that the requirement of "a causal connection" between the plaintiff's misrepresentations and his earlier back injury presented "the issue . . . whether his undisclosed medical condition increased his risk of injury." 189 N.C. App. at 45, 46, 657 S.E.2d at 398, 399. We, therefore, hold that when requiring a "causal connection" to satisfy the third element of N.C. Gen. Stat. § 97-12.1, the legislature intended that a defendant show that a plaintiff's undisclosed or misrepresented injury, condition, or occupational disease increased the risk of the subsequent injury or disease.

Here plaintiff concedes, and Dr. Harley's unchallenged expert medical testimony indicates, that plaintiff's prior back problems, which she concealed from defendant employer, increased the potential for her 2011 back injury if she violated her lifting restrictions. Nonetheless, plaintiff argues that because there was "no evidence as to the exact parts being lifted" while plaintiff worked with Continental, the Commission could not have concluded that plaintiff violated her lifting restrictions, and thus there could be no causal connection between her prior and recent back injuries. We disagree.

The Commission found that plaintiff developed severe right-sided pain and numbness on 18 July 2011 "as she was having to constantly twist and bend over to pick up trailer arms from the

pallet."   In addition, the Commission found that the trailer arms weighed between 20 and 25 pounds, a weight in excess of her work restrictions.   Although plaintiff argues that there was no evidence that she violated her work restrictions of lifting no more than 20 pounds, the Commission's finding regarding the weight of the trailer arms was supported by plaintiff's own testimony that the trailer arms weighed "about twenty -- maybe twenty-five pounds."

The Commission was entitled to find based on plaintiff's testimony that she was exceeding her work restrictions when she injured her back.   That finding, in conjunction with Dr. Harley's unchallenged expert testimony that plaintiff was at an increased risk of injury if she exceeded her work restrictions, supported the Commission's conclusion that a causal connection existed between plaintiff's false representation and her 18 July 2011 back injury.   We, therefore, hold that the Commission did not err in denying plaintiff's claim for worker's compensation based on N.C. Gen. Stat. § 97-12.1.   *See Freeman*, 189 N.C. App. at 47-48, 657 S.E.2d at 399 (holding that causal connection was established by expert testimony that plaintiff's undisclosed medical condition increased his risk of back injury at issue).

Plaintiff alternatively argues that N.C. Gen. Stat. § 97-12.1, as applied in this case, is an unconstitutional ex post

facto law.  However, "'[a] constitutional issue not raised at trial will generally not be considered for the first time on appeal.'"  *In re Cline*, ___ N.C. App. ___, ___, 749 S.E.2d 91, 102 (2013) (quoting *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002)), *disc. review denied*, ___ N.C. ___, 753 S.E.2d 781 (2014).  "Since this argument was not raised [below], it is not properly before us on appeal."  *Id.* at ___, 749 S.E.2d at 102.

However, even if this issue were before us, it would be without merit since N.C. Gen. Stat. § 97-12.1 does not involve a criminal offense.  *See State v. Wiley*, 355 N.C. 592, 625, 565 S.E.2d 22, 45 (2002) (explaining that ex post facto implicates four types of laws: "'1st.  Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action.  2d.  Every law that *aggravates a crime*, or makes it *greater* than it was, when committed.  3d.  Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed.  4th.  Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender*[]'" (quoting *Collins v. Youngblood*, 497 U.S. 37, 42, 111 L. Ed. 2d 30, 38-39, 110 S.

Ct. 2715, 2719 (1990)).  Accordingly, we affirm the Commission's opinion and award.

Affirmed.

Judges ROBERT C. HUNTER and McCULLOUGH concur.