IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-620

Filed 19 December 2023

Onslow County, No. 20CRS50692

STATE OF NORTH CAROLINA

v.

DAVID JONATHAN HILL, Defendant.

Appeal by defendant from judgment entered 15 December 2021 by Judge Imelda J. Pate in Superior Court, Onslow County. Heard in the Court of Appeals 27 February 2023.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Christopher R. McLennan, for the State.*

*Caryn Strickland for defendant-appellant.*

STROUD, Chief Judge.

Defendant appeals his convictions for larceny from a merchant by product code fraud and for misdemeanor larceny, arguing the trial court erred in denying his motion to dismiss based on insufficiency of the evidence and fatal variances in the indictments. Defendant also contends the trial court ordered Defendant to pay an incorrect amount of restitution. Because the evidence did not show Defendant "created" a product code "for the purpose of fraudulently obtaining goods or

merchandise from a merchant at less than its actual sale price" within the plain meaning of North Carolina General Statute § 14-72.11(3), the charge of larceny from a merchant should have been dismissed. There was no fatal variance in the indictment as to the remaining misdemeanor larceny since any erroneous statements in the indictment were mere surplusage. However, the trial court erroneously included property returned to Walmart when calculating the restitution Defendant should pay. Therefore, we find no error as to his conviction for misdemeanor larceny, vacate Defendant's conviction of larceny from a merchant, and remand to the trial court for re-sentencing and to enter a new order of restitution.

## I. Background

On 14 February 2020, a Walmart Asset Protection Manager ("manager") saw Defendant "placing a sticker over the top of a box" in the fabrics department of a Jacksonville, North Carolina Walmart. The boxed item was identified as a Cricut Air 2 sewing machine ("Cricut"). Because Defendant's behavior was unusual, the manager followed Defendant through the store. Defendant put the box into a shopping cart and went to the electronics department, where he took several items, then moved along to the women's apparel department. Stopping between two racks, Defendant concealed unpurchased electronics inside a backpack. The manager testified these items included, "several sets of headphones, some earbuds, a movie, [and] some little odds and ends that [Defendant] just grabbed off the shelf[.]"

Once the electronics were in the backpack, Defendant put the backpack on and

pushed his cart with the Cricut in it to self-checkout. At checkout, Defendant scanned the $7.98 product code he had placed on the Cricut box and paid $7.98 for the $227.00 Cricut. After Defendant passed the point of sale, the manager approached, identified himself as a Walmart representative, and asked Defendant for his identification, which Defendant provided. However, when the representative confronted Defendant about not paying the correct price for the Cricut, and asked to talk to Defendant about it, Defendant shouted "[d]on't touch me" and ran out of the store wearing the backpack full of electronics, leaving the Cricut behind in the shopping cart still inside the store.

The Walmart manager called law enforcement, who investigated the theft the same day. To help law enforcement in the investigation, the manager provided "a receipt of all the merchandise that was taken, as well as the receipt for what the defendant actually paid for in self-checkout." These receipts were admitted into evidence. At trial, the manager testified, based on these receipts, that the items Defendant placed in his backpack included four sets of headphones, a pack of Bic lighters, a John Wick DVD, a webcam, and a portable battery. The total value of the merchandise reported stolen, including the Cricut, was $477.15. The items Defendant put in his backpack were never recovered.

The manager testified the product code Defendant scanned on the Cricut box was "for a little shoe Tupperware that you would keep a single pair of shoes in[.]" A

photograph of this product code was admitted at trial and is included in the record.[1] The product code on the sticker is legible, although the sticker is wrinkled, torn on the side, and slightly curled on the side of the Cricut box. According to the manager, the Tupperware products were sold in the department located next to the fabrics and crafts department, the same place where the manager saw Defendant placing the sticker on the Cricut.

Defendant was indicted for (1) felony larceny from a merchant by product code fraud under North Carolina General Statute Section 14-72.11(3) and (2) misdemeanor larceny under North Carolina General Statute Section 14-72(a). The trial was held on 23-24 August 2021, and the State's evidence showed the facts summarized above. At trial, Defendant made a motion to dismiss at the close of the State's evidence, made no arguments to support his motion, and the motion was subsequently denied. Defendant renewed the motion to dismiss at the close of all evidence, made no arguments to support his motion, and was again denied.

The jury returned a verdict finding Defendant guilty of both larceny from a merchant by product code fraud under North Carolina General Statute Section 14-72.11(3), a felony, and misdemeanor larceny under Section 14-47(a). The trial court entered the judgment and ordered Defendant to pay $477.15 in restitution.

---

[1] The product code is commonly known as a UPC, or "Universal Product Code -- a combination of a bar code and numbers by which a scanner can identify a product and usu[ally] assign a price[.]" Merriam-Webster's Collegiate Dictionary 1369 (11th ed. 2003).

Defendant gave oral notice of appeal.

## II. Motion to Dismiss

Defendant contends the trial court erred in denying his motion to dismiss as to both charges.

## A. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (citation and quotation marks omitted).

"Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Smith*, 186 N.C. App. at 62, 650 S.E.2d at 33 (citation and quotation marks omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223

(1994) (citation omitted).

**B. N.C. Gen. Stat. § 14-72.11**

We first address Defendant's argument as to the charge of felony larceny by a product code. North Carolina General Statute Section 14-72.11 defines felonious larceny against a merchant as follows:

> A person is guilty of a Class H felony if the person commits larceny against a merchant under any of the following circumstances:
>
> (1) By taking property that has a value of more than two hundred dollars ($200.00), using an exit door erected and maintained to comply with the requirements of 29 C.F.R. § 1910.36 and 29 C.F.R. § 1910.37, to exit the premises of a store.
>
> (2) By removing, destroying, or deactivating a component of an antishoplifting or inventory control device to prevent the activation of any antishoplifting or inventory control device.
>
> (3) *By affixing a product code created for the purpose of fraudulently obtaining goods or merchandise from a merchant at less than its actual sale price.*

N.C. Gen. Stat. § 14-72.11 (2019) (emphasis added). Defendant's first argument as to sufficiency of the evidence hinges on the meaning of the word "created" as used in subsection 3 of the statute. This presents an issue of statutory interpretation and is a case of first impression as to the meaning of the word "created" under North Carolina General Statute Section 14-72.11(3).

"Statutory interpretation properly begins with an examination of the plain words of the statute." *State v. Carr*, 145 N.C. App. 335, 343, 549 S.E.2d 897, 902

(2001) (citation and quotation marks omitted). "When the language of a statute is clear and unambiguous, there is not room for judicial construction and the courts must give the statute its plain and definite meaning, and are without power to interpolate, or superimpose, provisions and limitations not contained therein." *Id.* (citation and quotation marks omitted). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning. When, however, a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *State v. Beck*, 359 N.C. 611, 614, 614 S.E.2d 274, 277 (2005) (citations and quotation marks omitted). "Statutory language is ambiguous if it is fairly susceptible of two or more meanings." *Purcell v. Friday Staffing*, 235 N.C. App. 342, 347, 761 S.E.2d 694, 698 (2014) (citation and quotation marks omitted). "We generally construe criminal statutes against the State. However, this does not require that words be given their narrowest or most strained possible meaning. A criminal statute is still construed utilizing common sense and legislative intent." *Beck*, 359 N.C. at 614, 614 S.E.2d at 277 (citations and quotation marks omitted).

The pertinent part of the statute for purposes of our analysis as to larceny from a merchant by product code fraud states that "[a] person is guilty of a Class H felony if the person commits larceny against a merchant . . . [b]y affixing a product code *created* for the purpose of fraudulently obtaining goods or merchandise from a merchant at less than its actual sale price." N.C. Gen. Stat. § 14-72.11(3) (emphasis

- 7 -

added).  This statute, Section 14-72.11, was first adopted in 2007, and subsection (3) has not been amended since its adoption.  *Compare* N.C. Gen. Stat. § 14-72.11(3) (2019) *with* N.C. Gen. Stat. § 14-72.11(3) (2007).

Defendant argues the word "created," as used in Section 14-72.11, is synonymous with "made" and refers to behavior found in "especially sophisticated and pernicious larceny schemes . . . where individuals *make* fake barcodes to get items at cheaper prices." (Emphasis added.)   Under Defendant's interpretation of the statute, a product code made by the retailer or manufacturer for the legitimate purpose of identifying the merchandise and its sales price was not "created for the purpose of fraudulently obtaining goods or merchandise . . . at less than its actual sale price."  N.C. Gen. Stat. § 14-72.11(3).  Defendant contends his conduct in the store does not fall within the statute because he transferred the product code from another product and did not "create" it.  Defendant argues that his conduct at most falls under a misdemeanor statute, North Carolina General Statute Section 14-72.1(d), which states:

> [w]hoever, without authority, willfully transfers any price tag from goods or merchandise to other goods or merchandise having a higher selling price or marks said goods at a lower price or substitutes or superimposes thereon a false price tag and then presents said goods or merchandise for purchase shall be guilty of a misdemeanor[.]

N.C. Gen. Stat. § 14-72.1(d) (2019).  The State, on the other hand, argues for a more expansive interpretation, asserting that "created," as used in Section 14-72.11(3),

should also include cases "when an individual generates *or repurposes* a product code to commit a larceny from a merchant[.]" (Emphasis added.)  To decide the question, we first look at the plain meaning of the word "create;" second, examine the word "create" within its context; and third, look at North Carolina larceny-related statutes in *pari-materia*.  *See Jackson v. Charlotte Mecklenburg Hosp. Auth.*, 238 N.C. App. 351, 358, 768 S.E.2d 23, 28 (2014) ("It is also a well-established principle of statutory construction that statutes *in pari materia* must be read in context with each other." (quotation marks and citations omitted)).

   *a. Plain meaning of "create"*

   We begin with the plain meaning of the word "create."  *See State v. Carr*, 145 N.C. App. at 343, 549 S.E.2d at 902.  Three dictionary definitions of "create" could potentially apply here: (1) "to bring into existence," (2) "to invest with a new form, office, or rank" or (3) "to produce or bring about by a course of action or behavior[.]" Merriam-Webster's Collegiate Dictionary 293 (11th ed. 2003).   The first definition, "to bring into existence," is the most commonly used definition of "create," and in the context of Section 14-72.11(3), would mean a defendant could only be convicted if they affixed a product code *specifically made* or "[brought into existence] for the purpose of fraudulently obtaining goods or merchandise from a merchant at less than its actual sale price."  *See* N.C. Gen. Stat. § 14-72.11(3); *see also* Merriam-Webster Collegiate Dictionary 293 (11th ed. 2003).  The second definition, "to invest with a new form" supposes a situation where the form of the label is changed to the extent

that it takes on a new form different than the original product code. *See* Merriam-Webster Collegiate Dictionary 293 (11th ed. 2003). The third definition, "to produce or bring about by a course of action or behavior" still requires something to be "produced" or "brought about" by an actor. *Id.*

Said differently, the first two plain dictionary definitions of "create" seem to contemplate (1) bringing something into existence that did not exist before, or (2) changing the form of a thing, to the extent something new and different is created. *Id.* The third definition, however, "bringing about by a course of action," is closest to the State's proposed definition of "repurposing" a product code by removing it from one item and affixing it to another item. *Id.* Looking at the word "create" in isolation, an argument could be made that the word is "fairly susceptible of two . . . meanings." *See Purcell*, 235 N.C. App. at 347, 761 S.E.2d at 698 ("Statutory language is ambiguous if it is fairly susceptible of two or more meanings."). But words in a statute are not construed in isolation, so we must next look at the word in context. *See Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006) ("The definition of words in isolation . . . is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities. Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis.").

b. *"Create" in Context*

The meaning of a word can change depending on its context. For example, the word "fire" can be a noun describing a pile of burning wood or a verb describing the act of terminating an employee from a job. *See* Merriam-Webster's Collegiate Dictionary 470-471 (11th ed. 2003). Because the actual meaning of a word may sometimes become obvious when the word is used in a sentence, we next consider the use of the word "created" within the context of the statute to determine if the meaning is indeed ambiguous. *See C Investments 2, LLC v. Auger*, 383 N.C. 1, 10, 881 S.E.2d 270, 278 (2022) ("Ordinary rules of grammar apply when ascertaining the meaning of a statute, and the meaning must be construed according to the context and approved usage of the language." (citation and quotation marks omitted)).

The full sentence in the statute, including the opening phrase, is:

> A person . . . commits larceny against a merchant under any of the following circumstances:
>
> . . . .
>
> (3) By affixing a product code created for the purpose of fraudulently obtaining goods or merchandise from a merchant at less than its actual sale price.

N.C. Gen. Stat. § 14-72.11(3).

Here, the phrase "created for the purpose of" modifies and characterizes the phrase "product code"[2] and means that an actor, the creator of the product code, must

---

[2] The technical grammatical terminology for the clause "created for the purpose of" as used in this statute is a reduced restrictive relative clause. It is a specific type of adjective phrase modifying "product code" in the statute.

have had a specific purpose for creating the product code, namely a purpose or aim to "fraudulently obtain[] goods or merchandise from a merchant at less than its actual sale price." *Id.* We next consider the grammatical construction of the statute to identify who is doing the "affixing" and who is doing the "creating." *See id.*

The "person" doing the "affix[ing]" in this sentence can only be the defendant charged with committing the crime of larceny because larceny in this statute is achieved "[b]y affixing a product code[.]" *Id.* The next clause, "created for the purpose of fraudulently obtaining goods or merchandise at less than its actual sale price" uses the passive voice to modify the noun "product code." *Id.* It is the passive use of "created" that tells us the defendant who "affixes" the price code need not necessarily be the same person who physically "created" the product code because the phrase "for the purpose of" modifies "created," not "affixed." *Id.* Said differently, the "affixing" defendant may or may not have personally "created" the product code; however, the creator of the product code must have had the statutorily defined fraudulent purpose in creating the code. *Id.*

Thus, under the language of the statute, a defendant commits this crime if he (1) affixes the product code *and* (2) the product code was "created for the purpose of fraudulently obtaining goods or merchandise from a merchant at a reduced price." *Id.* Reading the word "created" in the context of the statute supports Defendant's definition of "created," and is more appropriate here because it points to the moment that the product code was "brought into existence," not the moment it was relocated

by the actor affixing it to another product. *See id.; see also* Merriam-Webster's Collegiate Dictionary 293 (11th ed. 2003).

### c. *In pari materia review of North Carolina's larceny-related statutes*

But if the awkward wording and grammatical structure of the statute leave any questions of ambiguity, this interpretation of "create," based on the plain reading of the statute, is supported by an *in pari materia* review of the statutory framework for various types of larceny as defined in the General Statutes within Subchapter V, entitled "Offenses Against Property" and in Article 16, entitled "Larceny." *See* N.C. Gen. Stat. § 14-70 (2019) *et seq.*; *see State v. Mayo*, 256 N.C. App. 298, 301, 807 S.E.2d 654, 657 (2017) ("In discerning the intent of the legislature statutes *in pari materia* should be construed together and harmonized whenever possible." (citation and quotation marks omitted)). We will therefore consider N.C. Gen. Stat. Section 14-72.11(3) in the context of the other related larceny statutes.

"[A] statute must be strictly construed with regard to the evil which it is intended to suppress and interpreted to give effect to the legislative intent." *State v. Stephenson*, 267 N.C. App. 475, 479, 833 S.E.2d 393, 397 (2019) (citation and quotation marks omitted).

The structure and specificity of our larceny statutes, and the context in which Section 14-72.11(3) was enacted, make it clear that "created" must be interpreted to mean "brought into existence" and not "repurposed" as the State argues, because "repurposing" is already covered under another statute. *See* N.C. Gen. Stat. § 14-

72.1(d) (describing the action of "willfully transferring" (or repurposing) a price tag from one item to another to get a lower price). In general, larceny is "(1) the taking of the property of another; (2) carrying it away; (3) without the owner's consent; and (4) with the intent to permanently deprive the owner of the property." *State v. Speas*, 265 N.C. App. 351, 352, 827 S.E.2d 548, 550 (2019) (citations omitted). North Carolina's larceny-related statutes detail specific methods of committing larceny against specific property owners and delineate the particular types of property included in the offense. For example, Section 14-72(a) establishes felony larceny as larceny of goods exceeding $1,000 in value, and misdemeanor larceny as larceny of goods under that threshold, except as provided in subsections (b) and (c); subsection (c) sets out specific conduct by which a person might commit larceny and defines when such conduct rises to the level of a felony. *See* N.C. Gen. Stat. § 14-72(b)-(c) (2019). This trend continues through Article 16: the General Assembly delineates specific acts and circumstances by which a person might commit larceny and larceny-related offenses and whether those specific acts constitute a misdemeanor or felony. *See, e.g.*, N.C. Gen. Stat. § 14-72.5(a) (2019) ("If any person shall take and carry away *motor fuel* valued at less than one thousand dollars ($1,000) *from an establishment where motor fuel is offered for retail sale* with the intent to steal the motor fuel, that person shall be guilty of a Class 1 misdemeanor." (emphasis added)); N.C. Gen. Stat. § 14-72.6 (2019) ("A person is guilty of a Class I felony if he commits . . . [l]arceny of *goods from a permitted construction site*." (emphasis added)). The structure of Article 16

indicates that the *specific act* defendant is alleged to have committed dictates which specific type of larceny the defendant may have committed. *See* N.C. Gen. Stat. § 14-70 (2019) *et seq.*

Defendant was correct that the State's evidence was insufficient to convict him of a felony under Section 14-72.11(3), because his conduct was, at most, punishable as a misdemeanor. *See also* N.C. Gen. Stat. § 14-72.1(d) ("Whoever, without authority, willfully *transfers any price tag from goods or merchandise to other goods or merchandise having a higher selling price* or marks said goods at a lower price *or substitutes or superimposes thereon a false price tag* and then presents said goods or merchandise for purchase shall be guilty of a misdemeanor[.]" (emphasis added)). Here, two statutes criminalize the similar acts of purchasing a product at a fraudulently reduced price, *see* N.C. Gen. Stat. §§ 14-72.11(3), 14-72.1(d), but for the purposes of this case, an important distinction between the two statutes lies in the nature of the "label," whether it was simply a transferred price tag, regardless of how it was created, or if it was a product code "created for the purpose of" fraudulent activity.[3] *Compare* N.C. Gen. Stat. § 14-72.1(d) (describing the price tag required for the misdemeanor offense as "any price tag") *with* N.C. Gen. Stat. § 14-72.11 (describing the "product code" necessary for the offense as being created for the purpose of fraud).

---

[3] Here, we use the term "label" to include both product codes and price tags.

The General Statutes provide no definition for either "product code" or "price tag," so we must use the ordinary definitions of these terms. *See Surgical Care Affiliates, LLC v. N.C. Indus. Comm'n*, 256 N.C. App. 614, 621, 807 S.E.2d 679, 684 (2017) ("When a statute employs a term without redefining it, the accepted method of determining the word's plain meaning is not to look at how other statutes or regulations have used or defined the term–but to simply consult a dictionary.").

A "price tag" is defined as "a tag on merchandise showing the price at which it is offered for sale[.]" Merriam-Webster's Collegiate Dictionary 985 (11th ed. 2003). Prior cases have used the term "price tag" with its ordinary meaning: a tag affixed to a product to show the price of the product. *See, e.g.*, *State v. Odom*, 99 N.C. App. 265, 269, 393 S.E.2d 146, 149 (1990) (describing a price tag with the brand-name, item code and number, followed by the price). The price tag may show a hand-written or typed price, or it may show the price by using a "product code" instead. A "product code" is defined as a "Universal Product Code," or UPC, which is "a combination of a bar code and numbers by which a scanner can identify a product and usu[ally] assign a price[.]" Merriam-Webster's Collegiate Dictionary 1369 (11th ed. 2003). Thus, it would be possible for an item offered for sale to have two separate indications of price – both a price tag and a product code – or an item may have only a price tag, or only a product code, or the price tag and the product code may be the same thing.

Here, the evidence shows the product code was on a sticker which also served as the price tag. Neither State nor Defendant contends there is any relevant

difference between these two terms based on the evidence in this case. The tag affixed to the Cricut box was a partially torn rectangular sticker – commonly known as a "price tag" – with a printed product code, or a "combination of a bar code and numbers by which a scanner can identify a product." *Id.* Based on the evidence, this tag was both the price tag and product code for the Tupperware box, and it was substituted for the price tag and product code of the Cricut. Walmart's scanner identified the item as a Tupperware box priced at $7.98 based on the "product code" printed on the "price tag."

Assuming *arguendo* that "created" in Section 14-72.11(3) could apply to repurposed or transferred product codes or to price tags obtained from another product, there would have been no need for two separate statutes, one a misdemeanor and the other a felony. N.C. Gen. Stat. §§ 14-72.1 (misdemeanor), 14-72.11 (felony). Indeed, it would be absurd to interpret the statutes as creating both a misdemeanor and felony achieved by the exact same action. *See Duplin Cnty. Bd. of Educ. v. Duplin Cnty. Bd. of Cnty. Comm'rs*, 201 N.C. App. 113, 119, 686 S.E.2d 169, 173 (2009) ("It is well settled that in construing statutes courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results. Accordingly, an unnecessary implication arising from one statutory section, inconsistent with the express terms of another on the same subject, yields to the expressed intent." (citations, quotation marks, and brackets omitted)).

- 17 -

Because the larceny statues are explicit about the conduct which constitutes each level of offense, we conclude the word "created" in Section 14-72.11(3) applies to the *specific scenario* where (1) an actor (the defendant or another person) created a false product code "for the purpose of fraudulently obtaining goods or merchandise at a reduced price" and (2) the defendant affixed it to the merchandise. Section 14-72.11(3) does not apply where a defendant transfers a legitimate product code printed on the price tag from one product to another, which is already punishable as a misdemeanor under Section 14-72.1. *Compare* N.C. Gen. Stat. § 14-72.11(3), *with* N.C. Gen. Stat. § 14-72.1.

Even viewed "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor[,]" *Rose*, 339 N.C. at 192, 451 S.E.2d at 223, there is insufficient evidence of larceny from a merchant by product code fraud because there is no evidence the product code that was affixed was "created for the purpose of fraudulently obtaining goods or merchandise from a merchant at less than its actual sale price." N.C. Gen. Stat § 14-72.11(3). The trial court erred by denying Defendant's motion to dismiss as to the charge of larceny from a merchant by product code fraud.

## III. Variance in Indictment

We still must address Defendant's conviction for misdemeanor larceny under North Carolina General Statute Section 14-72(a). N.C. Gen. Stat. § 14-72(a). Defendant argues, "[t]he trial court erred in denying [Defendant's] motion to dismiss

because there were fatal variances between the indictment and the evidence presented at trial."[4] Defendant specifically argues the indictment alleged he took two Cricuts, and at trial, the State only proved Defendant took one machine. Defendant does not, however, argue that the indictment otherwise failed to allege that he committed misdemeanor larceny of the other electronic items he placed in the backpack; his argument is limited to the reference to two Cricuts, where the evidence showed only one Cricut was taken.

## A. Standard of Review

"We review *de novo* the issue of a fatal variance." *State v. Clagon*, 279 N.C. App. 425, 431, 865 S.E.2d 343, 347 (2021). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Williams*, 362 N.C. at 632-33, 669 S.E.2d at 294 (citations and quotations omitted).

## B. Fatal Variance

Generally, "the evidence in a criminal case must correspond with the allegations of the indictment which are *essential and material* to charge the offense." *State v. Simmons*, 57 N.C. App. 548, 551, 291 S.E.2d 815, 817 (1982) (emphasis added)

---

[4] The State argues this issue was not preserved for appellate review under North Carolina Rules of Appellate Procedure 10. We note, "Our Supreme Court recently clarified that merely moving to dismiss at the proper time under Rule 10(a)(3) preserves *all* issues related to the sufficiency of the evidence for appellate review. [An indictment] variance-based challenge is essentially, a contention that the evidence is insufficient to support a conviction." *State v. Clagon*, 279 N.C. App. 425, 431, 865 S.E.2d 343, 347 (2021) (emphasis in original) (citations, quotations, and brackets omitted). Defendant's general motions to dismiss, therefore, preserved his variance challenge for review.

(citation and quotation marks omitted). This rule is based on "the obvious requirements that the accused . . . be definitely informed as to the charges against him, so that he may be enabled to present his defense and be protected against another prosecution for the same offense." *Id.* (citation omitted). "However, a variance will not result where the allegations and proof, although variant, are of the same legal signification. An immaterial variance in an indictment is not fatal." *Id.* at 551, 291 S.E.2d at 817-18 (citations, quotation marks, and brackets omitted). An indictment need only "reasonably notif[y] [a] defendant of the crime for which he was being charged by plainly describing *who did what and when* and by indicating which statute was violated by such conduct." *State v. Sturdivant*, 304 N.C. 293, 311, 283 S.E.2d 719, 731 (1981) (emphasis in original). "[T]o be fatal, a variance must relate to an essential element of the offense. Alternately, when an averment in an indictment is not necessary in charging the offense, it will be deemed to be surplusage." *State v. Bacon*, 254 N.C. App. 463, 467-68, 803 S.E.2d 402, 406 (2017) (citation, quotation marks, and original brackets omitted).

Here, there was a variance between the indictment and the State's evidence. The indictment alleged:

> [T]hat on or about [14 February 2020] and in Onslow County [Defendant] unlawfully and willfully did steal, take, and carry away *2 Cricut sewing machines*, 1 pack of 3 BIC lighters, 1 John Wick Movie DVD, 4 sets of headphones, 1 webcam, 1 FM Transmitter, 1 BW 10k gray battery pack, and 1 Anker battery pack, the personal property of Wal-Mart Stores, INC., a Corporation d/b/a

Walmart Store, such property having a value of $477.15.

(Emphasis added.) The indictment alleged Defendant violated North Carolina General Statute Section 14-72(a) (a misdemeanor) by this conduct, and, the evidence at trial indicates Defendant only took one Cricut machine.

Defendant asserts this variance is fatal and his motion to dismiss should have been granted. We disagree. The indictment's allegation that Defendant took 2 Cricut sewing machines is "surplusage" and "not necessary in charging the offense" of misdemeanor larceny. *See Bacon*, 254 N.C. App. at 468, 803 S.E.2d at 406.

Defendant was charged with misdemeanor larceny in violation of North Carolina General Statute Section 14-72(a). N.C. Gen. Stat. § 14-72(a) (2019). "The essential elements of larceny are: (1) the taking of the property of another; (2) carrying it away; (3) without the owner's consent; and (4) with the intent to permanently deprive the owner of the property." *Speas*, 265 N.C. App. at 352, 827 S.E.2d at 550. Reading the indictment without reference to the 2 Cricut sewing machines, the indictment states:

> [T]hat on or about the date of offense shown and in Onslow County [Defendant] unlawfully and willfully did steal, take, and carry away . . . 1 pack of 3 BIC lighters, 1 John Wick Movie DVD, 4 sets of headphones, 1 webcam, 1 FM Transmitter, 1 BW 10k gray battery pack, and 1 Anker battery pack, the personal property of Wal-Mart Stores, INC., a Corporation d/b/a Walmart Store, such property having a value of $477.15.

This indictment, even without mention of the Cricut machines, still alleges the four

essential elements of larceny. *See id.*; *see also Bacon*, 254 N.C. App. at 470-71, 803 S.E.2d at 408 (holding an indictment is sufficient to allege larceny after omitting a variance between the property alleged to have been taken and the evidence proven at trial).[5]

Here, the indictment "definitely inform[s Defendant] as to the charges against him, so that he may be enabled to present his defense and . . . be protected against another prosecution for the same offense." *Simmons*, 57 N.C. App. at 551, 291 S.E.2d at 817.

Therefore, the variance between the evidence presented at trial and the indictment is not fatal. *See id.* at 551, 291 S.E.2d at 817-18. The trial court did not err by denying Defendant's motion to dismiss as to his conviction for misdemeanor larceny.

## IV.    Restitution

Finally, Defendant makes an argument as to the amount of restitution. "On

---

[5] We also note fatal variances between the indictment and the evidence offered at trial as to the property taken tend to arise where property is inadequately described by the use of "general and broadly comprehensive words," *see State v. Ingram*, 271 N.C. 538, 542-44, 157 S.E.2d 119, 123-24 (1967) (noting fatal variance where property taken described as "merchandise, chattels, money, valuable securities and other personal property"); where the property proven to be stolen at trial deviates *entirely* from the property alleged in the indictment, *see Simmons*, 57 N.C. App. at 552, 291 S.E.2d at 818 (reversing trial court's judgment where indictment alleged the defendant stole eight freezers with unique serial numbers, but evidence of only one freezer at trial was shown and the serial number did not match any of the alleged eight freezers); or where the property is alleged to be owned by one party but at trial is proven to be owned by another. *See Bacon*, 254 N.C. App. at 467-71, 803 S.E.2d at 406-08. The present case is dissimilar, because the indictment specifically alleged several items were taken, these items were proven at trial, and there is only a variance as to the quantity of one item which is not a "necessary element of the offense of which the defendant is found guilty." *State v. Clark*, 208 N.C. App. 388, 390, 702 S.E.2d 324, 326 (2010).

appeal, we review *de novo* whether the restitution order was supported by evidence adduced at trial or at sentencing." *State v. Wright*, 212 N.C. App. 640, 645, 711 S.E.2d 797, 801 (2011) (citation and quotation marks omitted). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Williams*, 362 N.C. at 632-33, 669 S.E.2d at 294.

Here, the trial court ordered Defendant to pay restitution of $477.15. Based on the evidence, this amount includes the value of the Cricut and the various items in Defendant's backpack when he fled Walmart. But the State acknowledges Defendant left the Cricut behind in the cart when he ran from the store. The other items in the backpack were not recovered. Our statutes governing restitution only require Defendant to repay Walmart "for any injuries or damages arising directly and proximately" by Defendant's larceny. N.C. Gen. Stat. § 15A-1340.34 (2019). The trial court must consider the return of property to the injured owner and the condition in which that property was returned. *See id.* ("In determining the amount of restitution, the court shall consider . . . in the case of an offense resulting in the damage, loss or destruction of property of a victim: [r]eturn of the property to the owner of the property or someone designated by the owner[.]")

We therefore reverse the judgment as to the amount of restitution ordered and remand for entry of a judgment of restitution based on the damages Walmart suffered for the loss of the other items stolen, excluding the value of the Cricut which was never removed from the store.

## V.    Conclusion

We conclude the trial court erred by denying Defendant's motion to dismiss as to the charge of larceny from a merchant by product code fraud under North Carolina General Statute Section 14-72.11(3).   We vacate Defendant's conviction for this charge.  However, the trial court did not err in denying Defendant's motion to dismiss the charge of misdemeanor larceny based on a fatal variance under North Carolina General Statute Section 14-72(a).    Finally, we conclude the trial court erred in calculating restitution and remand for the trial court to enter a new restitution order.

NO ERROR IN PART; VACATED IN PART; AND REMANDED FOR RESENTENCING.

Judge TYSON concurs in a separate opinion.

Judge STADING concurs in result only.

TYSON, Judge, concurring by separate opinion.

We all agree the evidence presented to the trial court did not show Defendant "created" a product code "for the purpose of fraudulently obtaining goods or merchandise from a merchant at less than its actual sale price" to elevate the charge of larceny from a merchant to a felony by switching an unrelated and lower price tag. *See* N.C. Gen. Stat. § 14-72.11(3) (2021). We also all agree no fatal variance in the indictment is shown concerning the remaining misdemeanor larceny charge, and there is no error. Finally, we all agree Defendant's restitution order improperly calculated the amount of restitution, because the items stolen were recovered in a re-sellable condition by Wal-Mart. I concur and write separately to address the proper additional larceny from a merchant charge, which should have been charged, based upon the evidence.

The evidence clearly showed Defendant: (1) willfully; (2) "transfer[ed] a price tag from goods or merchandise to other gods or merchandise having a higher selling price;" (3) "without authority;" and, (4) "present[ed] the goods for purchase. N.C. Gen. Stat. § 14-72.1(d) (2021). Defendant should have been charged with shoplifting by substitution of price tags for the Cricut machine and using an unrelated lower price tag to pass the point of sale to steal the merchant's property. *Id.*